**In re WADE COOK FINANCIAL CORPORATION; The Stock Market Institute of Learning, Inc.; Information Quest, Inc.; Lighthouse Books, Inc., fka Lighthouse Publishing Group, Inc., Debtors.**

**United States Of America, Appellant,**

**v.**

**Diana K. Carey, Chapter 11 Trustee, Appellee.**

**BAP No. WW–06–1279–DRS.**

**Bankruptcy No. 02–25434–TTG.**

**Adversary No. 06–01133–TTG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on March 23, 2007.

Filed Sept. 24, 2007.

---

Paul S. Ham, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for United States of America, IRS.

Christopher M. Alston, Foster, Pepper & Shefelman, Seattle, WA, for Diana K. Carey, Ch. 11 Trustee.

Before: DUNN, RADCLIFFE [1] and SMITH, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The appellant, the United States, on behalf of its agency, the Internal Revenue Service ("IRS"), appeals several orders entered by the bankruptcy court in connection with a summary judgment motion by the appellee, Diana K. Carey, the chapter 11 trustee (the "trustee").[2]

This appeal arises out of a dispute between the IRS and the trustee as to whether the IRS may assert its right to set off certain prepetition tax liabilities of the debtors, Wade Cook Financial Corporation ("WCFC") and Stock Market Institute of Learning, Inc. ("SMIL"), against an approximate $2 million refund due to WCFC, based on the carryback of net operating losses incurred in the 2002 tax year to the 1997 and 1998 tax years.

For the reasons set forth below, we REVERSE the bankruptcy court's grant of summary judgment for the trustee and REMAND for further proceedings on the issue of mutuality pursuant to § 553 and the issue of recoupment and AFFIRM the bankruptcy court's denial of summary judgment for the IRS.

## I. FACTS

WCFC was a holding company with several subsidiaries. One of its subsidiaries, SMIL, provided seminars, teaching various financial techniques and investment strategies, and produced and sold related books, tapes, and other products. Both WCFC and SMIL conducted business at the same physical location in Seattle, Washington.[3]

On December 19, 2002, an involuntary chapter 7 bankruptcy petition was filed against each of WCFC and SMIL (collectively, "the debtors").[4] On December 20, 2002, upon an ex parte motion of one of the petitioning creditors, the bankruptcy court entered an order consolidating the two cases for the purposes of joint administration.[5]

---

1. Hon. Albert E. Radcliffe, Bankruptcy Judge for the District of Oregon, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, April 20, 2005, 119 Stat. 23 ("BAPCPA"), as the debtors' case was filed in advance of the BAPCPA effective date.

3. The trustee later terminated the operations of both WCFC and SMIL.

4. WCFC was assigned case no. 02–25434, and SMIL was assigned case no. 02–25433.

5. As a result, the WCFC bankruptcy case became the lead case.

On January 17, 2003, the bankruptcy court entered an order converting the case from chapter 7 to chapter 11. Less than a week later, the trustee was appointed.

On February 1, 2003, the trustee filed a corporate tax return, reflecting losses totaling $8,289,519, on behalf of WCFC for the 2002 tax year, which ended on December 31, 2002. Four days later, the trustee filed an application for a tax refund arising from the carryback and deduction of the net operating loss incurred by WCFC in the 2002 tax year from its 1997 and 1998 income (the "refund").[6]

On April 7, 2003, the trustee filed a motion to substantively consolidate SMIL, WCFC, Information Quest, Inc. ("IQ"), and Lighthouse Books, Inc. ("LB"), two non-debtor subsidiaries of WCFC ("Substantive Consolidation Motion"). After a hearing on the matter, the bankruptcy court entered an order on April 28, 2003, substantively consolidating WCFC, SMIL, IQ and LB, effective nunc pro tunc to December 19, 2002 ("Substantive Consolidation Order").

Approximately two years after the trustee applied for the refund, the trustee and the IRS entered negotiations regarding the trustee's claim for the refund and any resulting tax consequences for WCFC and SMIL. They agreed that WCFC was overassessed in the amount of $1,994,232 for the 1997 tax year, but was subject to an

additional assessment of $142,944 in income tax for its 1998 tax year, resulting in a net overassessment of $1,851,288. The trustee and the IRS also agreed that SMIL was subject to an additional assessment of $992,481 in income tax for its 1997 tax year. They executed a separate agreement each for WCFC and SMIL, memorializing these determinations ("WCFC Offer to Waive" and "SMIL Offer to Waive," respectively). SMIL also was liable to the IRS for prepetition employment-related taxes from as far back as the 1995 tax year.[7]

On September 12, 2005, the trustee made a written request to the IRS to tender the refund. On January 10, 2006, the IRS responded that it was entitled to retain the refund and apply the same against the prepetition taxes owed by both WCFC and SMIL.

On February 24, 2006, the trustee filed a complaint against the IRS, demanding turnover of the refund. The IRS filed its answer, asserting that it "may freeze the Overpayment and setoff the Overpayment against the prepetition debts owed by the consolidated debtors to the IRS."

The trustee later filed a motion for summary judgment, contending that the IRS must turn over the refund because it failed to establish a right of setoff pursuant to § 553(a) ("Summary Judgment Motion").[8]

---

6. According to the trustee, applying the 2002 net operating loss carryback with respect to the 1997 and 1998 taxes paid resulted in an overpayment of $2,817,861.

7. On October 20, 2005, the IRS filed an amended proof of claim, asserting that SMIL owed approximately $1.6 million in prepetition employment-related taxes from 1995 through 2002 and related interest and penalties. The trustee conceded, in her response brief, that SMIL indeed owed over $1 million in prepetition employment-related taxes, though, in her complaint, she objected to a

part of the IRS's claim which asserted that $926,972 of the total amount was secured by a right of setoff.

8. 11 U.S.C. § 553(a) provides, in relevant part:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor

The IRS filed its response and cross-motion for summary judgment ("Cross–Motion"). As in its answer to the complaint, the IRS argued that mutuality existed, in part, because of the substantive consolidation of the bankruptcy cases, which indicated that SMIL was the alter ego of WCFC. The IRS also advanced in the Cross–Motion, for the first time, recoupment as an affirmative defense in support of its right to effectuate setoff.

On June 2, 2006, the bankruptcy court held a hearing on the Summary Judgment Motion and the Cross–Motion (collectively, the "Summary Judgment Motions"). At the hearing, the bankruptcy court made its findings orally on the record, determining that the IRS could not establish a right of setoff because it failed to meet the requirements set out under § 553(a).

The bankruptcy court based its determination on two findings. First, the bankruptcy court found that the IRS's obligation to remit the refund arose postpetition, not prepetition. Second, the bankruptcy court found that no mutuality existed as to the claims and debts and as to the parties. Specifically, the bankruptcy court determined that substantive consolidation did not create mutuality because the purpose of the substantive consolidation was merely to merge the assets of the two bankruptcy estates for the purposes of distributions among creditors with claims against either debtor, not to characterize the debtors as one legal entity. Thus, the bankruptcy court concluded that no mutuality existed as to the parties because WCFC and SMIL were not the same legal entity prepetition, and no mutuality existed as to the claims and debts among WCFC, SMIL, and the IRS, because the IRS owed the refund to WCFC, not SMIL.[9] The bankruptcy court did not rule specifically on the issue of recoupment.[10]

On June 12, 2006, the bankruptcy court entered an order, granting summary judgment in favor of the trustee and denying the Cross–Motion ("Summary Judgment Order").[11] The Summary Judgment Order fully adjudicated the entire adversary proceeding and constituted a final and appealable order.

Soon thereafter, the IRS filed a motion to alter or amend the Summary Judgment Order ("Motion to Alter"), arguing that there were new facts necessitating a reconsideration of the bankruptcy court's findings as to the issue of mutuality. Specifically, the IRS pointed out several facts regarding the business operations of WCFC and SMIL, arguably demonstrating that the debtors were alter egos prior

---

against the debtor that arose before the commencement of the case....

9. Though it is unclear from the transcript of the June 2, 2006 hearing, it appears that the bankruptcy court may have made an additional determination as to mutuality between the parties—that the obligation to remit the refund arose postpetition and was made in behalf of the bankruptcy estate, a different entity from WCFC and SMIL, prepetition.

10. At the June 2, 2006 hearing, counsel for the trustee stated, on the record, that the trustee opposed consideration of recoupment. In response, the bankruptcy court simply stated, "All right. With respect to these matters [i.e., mutuality], first of all, I've got all the motions in front of me this morning, even though some were noted, just because of the time rules, for later dates." Tr. of June 2, 2006 Hr'g at 15:20–23. It is thus unclear whether the bankruptcy court was making any determination as to the issue of recoupment.

11. The trustee, in her Summary Judgment Motion, contended that the IRS violated the automatic stay and requested damages, sanctions, and attorneys' fees and costs against the IRS. The bankruptcy court denied her request.

to the petition date. In support of the Motion to Alter, the IRS submitted numerous documents, forming thirteen exhibits labeled Exhibits A through M. On June 19, 2006, the trustee filed a motion to strike Exhibits B through M ("Motion to Strike Exhibits"), arguing that the IRS was improperly offering evidence it should have offered in conjunction with its Cross–Motion.

On July 21, 2006, the bankruptcy court held a hearing on the Motion to Alter and the Motion to Strike Exhibits. Following the hearing, the bankruptcy court entered separate orders granting the Motion to Strike Exhibits ("Motion to Strike Order") and denying the Motion to Alter ("Motion to Alter Order").

The IRS timely appealed the Summary Judgment Order, the Motion to Alter Order, and the Motion to Strike Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in granting the Summary Judgment Motion and denying the Cross–Motion based on its finding that the IRS failed to establish its right of setoff under § 553(a).

## IV. STANDARDS FOR REVIEW

We review summary judgment orders de novo. *Tobin v. San Souci Ltd. P'ship (In re Tobin)*, 258 B.R. 199, 202 (9th Cir. BAP 2001). Viewing the evidence in the light most favorable to the non-moving party, we must determine "whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law." *Id.*

When reviewing an order granting summary judgment, we may neither weigh the evidence nor determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Abdul–Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996). We may affirm an order granting summary judgment on any ground supported by the record. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 610 (9th Cir.2003).

Summary judgment may be appropriate when a mixed question of law and fact involves undisputed underlying facts. *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1103 (9th Cir.1998). "[W]here the underlying facts are undisputed, a [bankruptcy] court is free, on a motion for summary judgment, to determine whether the established facts satisfy the statutory standard." *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 n. 1 (9th Cir. BAP 1987). Summary judgment is improper, however, if material factual issues exist for trial. *Simo*, 322 F.3d at 610.

A bankruptcy court has discretion in disallowing a setoff. *Camelback Hospital, Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 236 (9th Cir. BAP 1991). We review the bankruptcy court's disallowance of a setoff for an abuse of discretion. *Id.* A bankruptcy court abuses its discretion if it bases its ruling on an erroneous view of the law. *United States v. Offord Finance, Inc. (In re Medina)*, 205 B.R. 216, 220 (9th Cir. BAP 1996). Absent such abuse, we will not set aside the disallowance. *Buckenmaier*, 127 B.R. at 236.

We review the bankruptcy court's denial of a motion for reconsideration for an abuse of discretion. *First Ave. West Bldg., LLC v. James (In re OneCast*

*Media, Inc.),* 439 F.3d 558, 561 (9th Cir. 2006). A bankruptcy court "abuses its discretion in denying a motion to reconsider if the underlying decision 'involved a clear error of law.'" *Id.* (quoting *McDowell v. Calderon,* 197 F.3d 1253, 1255 (9th Cir.1999) (en banc)).

■■■■■ We review a bankruptcy court's grant of a motion to strike for abuse of discretion. *Golden Gate Hotel Ass'n v. City & County of San Francisco,* 18 F.3d 1482, 1485 (9th Cir.1994). A bankruptcy court abuses it discretion when its judicial actions are "'arbitrary, fanciful or unreasonable' or 'where no reasonable man [or woman] would take the view adopted by the trial court.'" *Id.* (quoting *Delno v. Market St. Ry. Co.,* 124 F.2d 965, 967 (9th Cir.1942)).

## V. DISCUSSION

A. *The Bankruptcy Court's Ruling on the Summary Judgment Motions*

In granting summary judgment to the trustee, the bankruptcy court concluded that no genuine issues of material fact existed with respect to mutuality, even though the IRS raised the question as to whether substantive consolidation was indicative that WCFC and SMIL operated as a single functional entity. The bankruptcy court also concluded that the IRS's obligation to remit the refund was a purely postpetition obligation.

On appeal, the IRS argues that the bankruptcy court erred in granting the Summary Judgment Motion and denying the Cross–Motion. The IRS contends that the bankruptcy court made incorrect rulings as to the issues of mutuality and the timing of the IRS's obligation to remit the refund (i.e., whether such obligation arose with respect to prepetition or postpetition tax liabilities and credits). The IRS asserts that, contrary to the bankruptcy court's ruling, it is entitled to setoff the refund against the prepetition tax liabilities of WCFC *and* SMIL.

The IRS advances three main arguments. First, the IRS need not follow the requirements of § 553 to effectuate a setoff because § 106 and 26 U.S.C. § 6402 allow the IRS to override these requirements to enforce its setoff.[12] Second, the IRS establishes its right of setoff under § 553 because it meets all of the statutory requirements. Third, the IRS is entitled to setoff pursuant to the doctrine of recoupment. We address each of these arguments in turn.

1. *Section 553(a) controls in determining whether the IRS may assert its right of setoff.*

■■■■ As a preliminary matter, we must decide the question as to which rule of law prevails in determining the setoff rights of the IRS. The IRS argues that § 106 and the provisions of IRC § 6402 enable it to override the requirements set out under § 553 and to effectuate setoff of the refund against the prepetition tax liabilities of both WCFC and SMIL.[13]

---

12. The IRS cites to various sections of the Internal Revenue Code, 26 U.S.C. § 1 et al. Hereafter, we refer to the Internal Revenue Code as "IRC," to distinguish it from the Bankruptcy Code.

13. 26 U.S.C. § 6402(a) provides:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such over-

payment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, *subject to subsections (c), (d) and (e),* refund any balance to such person.

Section 106 provides, in relevant part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the

The IRS asserts that a court may allow the setoff of a debt that crosses the petition date as long as the requisites of common law setoff are met.[14] The IRS does not need to meet the requirement of mutuality specified in the common law, however, if an applicable statute defines the level of mutuality required. The IRS contends that IRC § 6402 is such a statute, supplanting the mutuality standard under the

common law and substituting an alternate standard. According to the IRS, IRC § 6402 limits mutuality to *who* made the overpayment, not *when* the debts and claims arose. In other words, the determinative factor for mutuality under IRC § 6402 is not whether the debts and claims arose prepetition, but whether the same parties are involved.[15] Under the IRC

> extent set forth in this section with respect to the following:
> (1) Sections 105, 106 ... [and] 553 ... of this title.
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> (3) The court may issue against a government unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
> ...
> (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

sulted in an unsecured claim for the IRS. The debtor grouped the IRS's unsecured claim with the claims of other unsecured creditors in its confirmed plan, which provided for a 20% distribution to unsecured creditors. All of the creditors in the class, except the IRS, received a distribution. Later, the debtor discovered that it had a claim for a refund, based on overpayments which it made postpetition for unemployment taxes for the 1987 and 1989 tax years. Relying on *In re Seal*, 192 B.R. 442 (Bankr.W.D.Mich.1996), which allowed for the setoff of postpetition debts in a case involving analogous facts, the district court determined that, although the IRS's unsecured claim arose at least in part prepetition, it became a postpetition debt when the debtor grouped the claim with the claims of other unsecured creditors in the plan, and that classification survived plan confirmation. *Gordon Sel–Way*, 239 B.R. at 751. The district court further interpreted § 553 to address only prepetition debts; it did not abrogate the right of a party to offset mutual postpetition debts. *Id.* at 750–51 ("Section 553 merely addresses prepetition debts and is silent as to offset for mutual postpetition debts. Nothing about the Bankruptcy Code abrogates the common law right to setoff; thus, bankruptcy courts have recognized the right to setoff for postpetition debts."). The court found that the debts were mutual. Based on its determination as to the mutuality of the debts and its reading of § 553, the district court concluded that the IRS could set off its claim against the refund.

14. The IRS cites to *United States v. Gordon Sel–Way, Inc. (In re Gordon Sel–Way, Inc.)*, 239 B.R. 741 (E.D.Mich.1999), *aff'd*, 270 F.3d 280 (6th Cir.2001), in support of this proposition. In *Gordon Sel–Way*, the debtor, which filed for chapter 11 relief in 1988, failed to pay federal employment-related taxes from 1987 through 1990. This failure to pay re-

15. Section 553 conditions mutuality on whether the countervailing debts are " 'in the same right and between the same parties, standing in the same capacity.' " *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir.1996) (quoting 4 COLLIER ON BANKRUPTCY ¶ 553.04[2] (15th ed.1995)).

§ 6402 definition of mutuality, the IRS may set off its debt (i.e., its obligation to remit the refund) against the prepetition tax liabilities of WCFC because, even though the net operating loss was recognized postpetition, WCFC, the prepetition debtor, made the overpayment.

The IRS provides no authority to support this proposition. Although the IRS has a right of setoff under IRC § 6402, the fact that the IRS holds this right does not mean that IRC § 6402 supplants § 553 in determining whether this right is recognized and preserved in bankruptcy. Contrary to the IRS's assertion, IRC § 6402 merely grants a right of setoff to the IRS. *See Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772, 781 (2d Cir.1996) ("We are convinced that, just as 26 U.S.C. § 6402(d) . . . gives federal agencies other than the IRS a right of setoff against tax overpayments, so [IRC] § 6402(a) grants that right to the IRS itself."); *Campbell v. United States (In re Davis)*, 889 F.2d 658, 661 (5th Cir.1989) (stating that the IRS's right of setoff is derived from IRC § 6402, which provides that, generally, a party has a right to a tax refund of the amount exceeding any outstanding tax liabilities); *Stewart v. Army & Air Force Exch. Serv. (In re Stewart)*, 253 B.R. 51, 53 (Bankr.E.D.Ark.2000) (stating that the IRS's right to setoff exists pursuant to IRC § 6402(a)); *Jones v. United States (In re Jones)*, 212 B.R. 680, 682 n. 12 (Bankr.M.D.Ala.1997) (stating that IRC § 6402 creates the right of setoff, and § 553 preserves this right).[16]

Section 553 is the primary statute that governs whether a right of setoff is recognized and preserved in bankruptcy. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 956 n. 12 (9th Cir.2006) (stating that § 553 governs the equitable right of setoff in bankruptcy, but does not create a right of setoff); *Newbery*, 95 F.3d at 1398 (stating that § 553 governs setoff in bankruptcy cases and that § 553 is not an independent source of setoff law, but a legislative attempt to preserve nonbankruptcy setoff rights) (citing *United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 763 (9th Cir.1994)); *Biggs v. Stovin (In re Luz Int'l, Ltd.)*, 219 B.R. 837, 843 (9th Cir. BAP 1998); *In re Medina*, 205 B.R. at 220–21; *Beaucage v. United States (In re Beaucage)*, 334 B.R. 353, 356 (Bankr.D.Mass.2005) (where the IRS recognized that its right of setoff under IRC § 6402 is subject to the mutuality requirement of § 553(a)); *In re Jones*, 212 B.R. at 682 n. 12.

Though IRC § 6402 creates a right of setoff for the IRS, it does not except the IRS from meeting the requirements of § 553.

There is nothing in the Bankruptcy Code that grants the IRS a special status above and beyond other creditors whose rights of setoff are subject to the requirements of § 553. *See Chateaugay*, 94 F.3d at 781 (finding that, although a federal treasury statute granted priority to IRS setoffs over other government agencies' setoffs, it does not circumvent the requirements of § 553, which requires a creditor, in order to have its right to setoff preserved in bankruptcy, to show that the setoff involves a prepetition mutual debt).[17]

**16.** In *In re Chateaugay,* the appellate court points out and cites to a number of courts that do not consider IRC § 6402 as a codification of the common law rule of setoff. 94 F.3d at 781.

**17.** In its reply brief, the IRS maintains that *Chateaugay* supports its assertion that IRC § 6402 supplants § 553, allowing the IRS to set off postpetition debts against prepetition claims. Specifically, the IRS quotes to this language in *Chateaugay* to support this proposition: "[I]f LTV Steel's excise tax liabilities

*Cf. United States v. Whiting Pools, Inc.,* 462 U.S. 198, 209, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (Although the IRS had a right to levy on the debtor-in-possession's property pursuant to IRC § 6331, the statute did not transfer ownership of the property to the IRS; thus, the IRS, though a governmental unit, was still subject to § 542(a) to the same extent as any other secured creditor, obligating it to turn over the property, as "[n]othing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien."); *United States v. Fuller (In re Fuller),* 134 B.R. 945, 948 (9th Cir. BAP 1992) (finding that the IRS is not entitled to be excepted from the automatic stay violation provisions of § 362, in a case where the IRS tried to attach a prepetition tax lien, pursuant to IRC § 6321, against funds inherited by the debtor 120 days after the petition date) (citing *Whiting Pools,* 462 U.S. at 209, 103 S.Ct. 2309).

Even in conjunction with other statutes, IRC § 6402 does not override § 553. The IRS asserts that IRC §§ 6402(a) and 6411(b) together mandate that no right to refund exists until the IRS credits the overpayment against the taxpayer's unpaid tax liabilities. The IRS implies that these two statutes grant it the right to effectuate setoff against the debtors. Again, there is nothing in the Bankruptcy Code that grants the IRS special status, excusing it from meeting the requirements of § 553.

Nor does § 106 allow the IRS to circumvent the requirements of § 553, as the IRS contends.

According to the IRS, under § 106(a)(4), read in conjunction with IRC § 7422 and 28 U.S.C. § 1346(a)(1), the IRS may apply an overpayment to another tax liability owed by a taxpayer pursuant to IRC § 6402 before remitting a refund to the taxpayer.[18] The IRS misconstrues and

---

were pre-petition claims, the IRS's claim would take precedence over the claims of the DOL, and hence over Aetna's claims. But it cannot serve to defeat Aetna's pre-petition claims if LTV Steel's tax liabilities arose postpetition." 94 F.3d at 781.

In *Chateaugay,* the debtor was entitled to receive a refund for overpayment on certain taxes. The debtor was liable for postpetition excise taxes to the IRS, but was also liable to the Department of Labor ("DOL") and its subrogee, Aetna, for black lung disability benefits payments they made prepetition. The IRS argued that it could exercise its right to setoff its claim against the refund *before* the DOL and Aetna could do so.

The IRS misreads *Chateaugay.* In *Chateaugay,* the appellate court only acknowledged that a treasury regulation generally entitled the IRS to priority to offset its claim against any overpayment before any other government agency, so long as the tax liabilities on which its claim was based arose prepetition. However, the appellate court went on to state that this regulation would not allow the IRS to execute its right of setoff before that of the

DOL and Aetna, as the IRS's claim was based on postpetition tax liabilities. Thus, *Chateaugay* does not stand for the proposition the IRS advances.

The IRS refers us to portions of the record in *Chateaugay,* which the trustee provided to us as "Supplemental Authorities." We find that these additional materials are not relevant and do not impact our reading of *Chateaugay.*

18. 26 U.S.C. § 7422(a) provides:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

28 U.S.C. § 1346(a)(1) provides that a district court shall have original jurisdiction,

misapplies these statutes. Section 106(a)(4) provides that a governmental unit waives sovereign immunity as to the enforcement of any orders, processes or judgments rendered against it, so long as such enforcement is consistent with non-bankruptcy law applicable to that particular governmental unit. *Brown v. United States (In re Brown)*, 211 B.R. 1020, 1023–24 (Bankr.S.D.Ga.1997). IRC § 7422, in conjunction with 28 U.S.C. § 1346(a), conditions a federal court's authority to hear a refund suit upon the filing of a claim for refund by the taxpayer. *United States v. Dalm*, 494 U.S. 596, 601–02, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *Miller v. United States*, 784 F.2d 728, 729 (6th Cir. 1986); *Perkins v. United States (In re Perkins)*, 216 B.R. 220, 225–26 (Bankr. S.D.Ohio 1997). These statutes do not generally authorize the IRS to set off a refund against any prepetition tax liabilities of a bankrupt taxpayer before remitting the refund for the benefit of the estate.

■ The IRS also asserts that § 106(c) authorizes the offset of *any* claim, regardless of whether the claim is prepetition or postpetition, so long as that claim is property of the estate. Under this interpretation of § 106(c), the trustee's claim for the refund, which constitutes property of the estate under § 541, must be offset against the IRS's claim for payment of prepetition tax liabilities.

The IRS again misinterprets a statute in an attempt to end run the requirements of § 553. Section 106(c) merely allows the bankruptcy estate to set off any claim it has against the government against any claim that a governmental unit may have

against the bankruptcy estate, notwithstanding any assertion of sovereign immunity by the governmental unit. *Franklin Sav. Corp. v. United States (In re Franklin Sav. Corp.)*, 385 F.3d 1279, 1285, 1289–90 (10th Cir.2004) (stating that "[s]ection 106 is simply a waiver of sovereign immunity; it does not create a claim for relief, nor does it provide a separate basis for subject matter jurisdiction" and that "[t]he legislative history of § 106, as evidenced by both the Senate and House Committee reports, confirms that Congress intended § 106 to provide a limited waiver of sovereign immunity to enable a debtor to recover damages only to the same extent that the debtor's claims would be cognizable outside of bankruptcy"); *Chateaugay*, 94 F.3d at 779 n. 10 (finding that, contrary to the appellant's assertion, § 106(c) does not grant a right to setoff, but purports to recognize a partial waiver of sovereign immunity by empowering a debtor to assert a setoff right against a governmental agency when it has filed proofs of claim in the bankruptcy case); 2 COLLIER ON BANKRUPTCY ¶¶ 106.01, 106.02[4], 106.07 (15th ed. rev.2006). *See also Ossen v. Dep't of Soc. Serv. (In re Charter Oak Assocs.)*, 361 F.3d 760, 769 (2nd Cir.2004) (stating that, under § 106(c), a state's sovereign immunity does not protect it against any counterclaim the bankruptcy estate may assert against a state to the extent that it would reduce or defeat any claim asserted by the state); *In re Microage Corp.*, 288 B.R. 842, 852–53 (Bankr.D.Ariz.2003) (stating that, under § 106(c), the state has no sovereign immunity against any counterclaims asserted by the bankruptcy estate to offset any claims asserted against it by the state). As such, § 106 does not, as the

---

concurrent with a federal tax court, of any civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have

been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the federal tax laws.

IRS claims, expand any setoff rights the IRS may have against the bankruptcy estate.

Regardless of whether the IRS has a right to setoff under IRC § 6402 and/or other nonbankruptcy statutes, its ability to assert its right of setoff in bankruptcy is subject to the requirements of § 553. The IRS must demonstrate that it has an enforceable right to setoff that should be preserved in the bankruptcy case pursuant to § 553. *Newbery,* 95 F.3d at 1399 (stating that the party asserting the right of setoff has the burden of proving it has an enforceable right) (citing *Fed. Nat. Mortgage Ass'n v. County of Orange (In re County of Orange),* 183 B.R. 609, 615 (Bankr.C.D.Cal.1995)); *Luz Int'l,* 219 B.R. at 843 (stating that, to enforce a setoff right, the creditor must show that it has a right of setoff under nonbankruptcy law and that this right should be preserved in bankruptcy under § 553).

### 2. *Issues of material fact exist making summary judgment improper.*

Having determined which statute controls the ability of a creditor to assert setoff rights in a bankruptcy case, we now turn to § 553 to decide whether the bankruptcy court erred in concluding that the IRS could not assert its right of setoff against the debtors on the grounds that the IRS's obligation to remit the refund arose postpetition and that the countervailing claims lacked mutuality.

Section 553 sets forth three conditions that must be met in order for a right of setoff to be recognized and preserved in bankruptcy: "(1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual." *Luz Int'l,* 219 B.R. at 843–44; *see also* 5 COLLIER ON BANKRUPTCY ¶ 553.01[1] (15th ed. rev.2006).

In essence, a creditor must establish two elements before a setoff may be asserted: timing and mutuality. *Buckenmaier,* 127 B.R. at 238.

With regard to the timing element, "each debt or claim sought to be offset must have arisen *prior* to the filing of the bankruptcy petition." *Newbery,* 95 F.3d at 1398 (emphasis added); *Buckenmaier,* 127 B.R. at 238.

With respect to the mutuality element, the debts and claims must be " 'in the same right and between the same parties, standing in the same capacity.' " *Newbery,* 95 F.3d at 1398–99 (quoting 4 COLLIER ON BANKRUPTCY ¶ 553.01[4] (15th ed.1995)); *Parkway Plaza Investors v. Bacigalupi (In re Bacigalupi, Inc.),* 60 B.R. 442, 446 (9th Cir. BAP 1986). The mutuality requirement is strictly construed. *Newbery,* 95 F.3d at 1399; *Bacigalupi,* 60 B.R. at 446; *see also Hopkins v. D.L. Evans Bank (In re Fox Bean Co.),* 287 B.R. 270, 286 (Bankr.D.Idaho 2002) ("Section 553(a) recognizes a creditor's right of offset *provided* mutual debts exist. In other words, the Code does not allow an offset absent mutuality.") (emphasis in original).

#### a. *The IRS's obligation to remit the refund may be a prepetition debt.*

The bankruptcy court misapplied the law in determining that the IRS's obligation to remit the refund was wholly postpetition in nature. The bankruptcy court found that WCFC did not possess a right to claim a refund until December 31, 2002, approximately eleven days after the filing of the involuntary bankruptcy petition, as it was only after filing the federal tax return for the year ended December 31, 2002, that the trustee ascertained that it could carry back WCFC's net operating loss and apply it to WCFC's 1997 and 1998 taxable income. The bankruptcy court

concluded that the IRS's obligation to remit the refund did not arise until postpetition. Accordingly, mutuality was lacking.

The trustee asks us to uphold the bankruptcy court's determination. She asserts that the IRS's tax refund obligation did not arise until the end of the taxable year, postpetition, and cites to a number of cases in support. *See, e.g., In re Franklin Sav. Corp.,* 177 B.R. 356 (Bankr.D.Kan.1995); *In re Thorvund–Statland,* 158 B.R. 837 (Bankr.D.Idaho 1993); *Rozel Indus., Inc. v. Internal Revenue Service (In re Rozel Indus., Inc.),* 120 B.R. 944 (Bankr.N.D.Ill. 1990). According to the trustee, the "rationale [for this holding] is that [the IRS] cannot owe a taxpayer a refund until the taxpayer actually overpays the taxes." Under this reasoning, WCFC did not have a valid and enforceable right against the IRS for a refund prepetition because it could not have known until the end of the 2002 tax year, December 31, 2002, the exact amount of losses it would suffer and could carry back and apply to prior years' taxable income.[19] Thus, the trustee argues, the IRS cannot establish that its obligation to remit the refund arose prepetition.

The Bankruptcy Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12); *In re Luz Int'l,* 219 B.R. at 844; *Braniff Airways, Inc. v. Exxon Co.,* 814 F.2d 1030, 1035 (5th Cir.1987); *United States v. Gerth,* 991 F.2d 1428, 1433 (8th Cir.1993). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(5). " 'Debt' should be read as being coextensive with the term 'claim.' " *Gerth,* 991 F.2d at 1433; *see also Buckenmaier,* 127 B.R. at 238 (stating that the meanings of claim and debt are coextensive) (quoting *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)).

"[D]ependency on a postpetition event does not prevent a debt from arising prepetition." *Gerth,* 991 F.2d at 1433. The character of a claim does not transform from prepetition to postpetition because that claim is contingent, unliquidated or unmatured when the debtor files its petition. *Braniff,* 814 F.2d at 1036 (citing *Stair v. Hamilton Bank of Morristown (In re Morristown Lincoln–Mercury, Inc.),* 42 B.R. 413, 417–18 (Bankr. E.D.Tenn.1984)). A debt can be owing prepetition even though that debt did not come into existence until postpetition events occurred. *Gerth,* 991 F.2d at 1434; *In re Gibson,* 308 B.R. 763, 766–68 (Bankr. N.D.Tex.2002); *Rozel,* 120 B.R. at 949 ("Generally, a claim or debt must be found to be absolutely owing at the time of the filing of the petition to be considered a pre-petition item. This does not necessarily require that the amount of such item be specifically known or that it be currently due, only that some definite liability has accrued."); *Eggemeyer v. Internal Revenue Service (In re Eggemeyer),* 75 B.R. 20, 21 (Bankr.S.D.Ill.1987) ("The right to setoff exists provided that the debt is 'absolutely owing at the time of the filing of the petition even though [it is] not due or liquidated.' ") (quoting *Lawrence v. Commissioner (In re Lawrence),* 19 B.R. 627, 629 (Bankr.E.D.Ark.1981)). Further, there is nothing in the definitions of "debt" or "claim" or in the provisions of § 553

---

19. Net operating losses "are simply an accounting method for figuring [the taxpayer's] entitlement to the refund under the present tax code. Pre-election, the right to carry back the [net operating losses] represented simply the right to a tax refund...." *United States v. Sims (In re Feiler),* 218 F.3d 948, 956 (9th Cir.2000).

requiring that an amount due must be computed before the bankruptcy petition date. *Braniff*, 814 F.2d at 1036.

It is true, as the trustee points out, that a number of courts have held that a tax refund arises at the end of the tax year to which it relates. *See Rozel*, 120 B.R. at 950–51 ("[T]here are several decisions which hold that a tax refund for purposes of § 553 arises at the end of the taxable year to which it relates, and not when that right of refund is claimed by the taxpayer/debtor."); *In re Glenn*, 207 B.R. 418, 420 (E.D.Penn.1997) ("[T]he vast majority of courts ... have held that a taxpayer's interest in a tax refund arises at the end of the taxable year...."); *United States v. Johnson (In re Johnson)*, 136 B.R. 306, 309 (Bankr.M.D.Ga.1991) ("Courts generally have held that the substantive right to a tax refund arises at the end of the tax year to which the refund relates.").

But the trustee unduly emphasizes the necessity to calculate and determine the extent of the refund prior to the filing of the bankruptcy petition to determine whether the IRS's debt to WCFC was prepetition or postpetition. The fact that the extent of the refund is indeterminate at the time of the filing of the petition does not affect the right of the taxpayer to claim a refund. *See Braniff*, 814 F.2d at 1036; *Rozel*, 120 B.R. at 949–50.

WCFC's claim for a loss-carryback refund, though unliquidated at the time the involuntary bankruptcy petition was filed against WCFC, is still based largely on prepetition events. Even if the claim to the refund is unliquidated, unmatured or contingent, the taxpayer still holds an enforceable claim, which the IRS is obligated to satisfy. *See Luz Int'l*, 219 B.R. at 844 (determining that a claim as a right to payment "encompass[es] virtually any type of obligation reducible to some monetary equivalent"); *Braniff*, 814 F.2d at 1036

(finding that "[t]he debt owed the debtor does not have to be calculated prior to the filing of the bankruptcy petition in order for setoff to be available to a creditor"); *Gerth*, 991 F.2d at 1433 ("For setoff purposes, a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed."); *see also Buckenmaier*, 127 B.R. at 238 (stating that "under the broad definition of the term 'claim,' contribution and indemnification claims arise at the time when the acts giving rise to the alleged liability were performed, and not when the claims technically accrue under state law.").

Here, WCFC's refund claim relates back to the 1997 and 1998 tax years, even though the carryback losses occurred in 2002. Although WCFC could not calculate the complete extent of the loss carryback claim until after the 2002 tax year ended, eleven days postpetition, a substantial portion of WCFC's losses probably took place and were reasonably ascertainable before the end of the 2002 tax year.

Under the approach set forth in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the IRS's debt could be characterized as a prepetition debt because the refund was generated by a loss carryback, which was based on losses incurred primarily prepetition, but determined postpetition. *See Segal*, 382 U.S. at 379–80, 86 S.Ct. 511 (holding that a loss carryback tax refund, based on prepetition losses but received postpetition, constitutes property of the estate under the former Bankruptcy Act because it is "sufficiently rooted in the pre-bankruptcy past," and such "an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."). Though *Segal* was decided under the prior Bankruptcy Act, it remains good law under

the Bankruptcy Code applicable to the instant case. *United States v. Sims (In re Feiler)*, 218 F.3d 948, 955 (9th Cir.2000); *Chappel v. Proctor (In re Chappel)*, 189 B.R. 489, 493 (9th Cir. BAP 1995).

Further, *Segal* suggests that if the refund for a tax year is increased because of losses incurred postpetition, the court should consider a proration of the refund between the prepetition and postpetition portions of the tax year at issue. *Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1517 (10th Cir.1991) (citing *Segal*, 382 U.S. at 380 n. 5, 86 S.Ct. 511). Under this principle, the bankruptcy court could characterize most of the refund claim as prepetition. *See, e.g., Sticka v. Lambert (In re Lambert)*, 283 B.R. 16, 21 (9th Cir. BAP 2002) (affirming the bankruptcy court's order prorating a portion of a tax refund as property of the estate only to the extent attributable to the prepetition part of the tax year); *Barowsky*, 946 F.2d at 1517–19 (affirming the bankruptcy court's proration of the debtors' income tax refund between the prepetition and postpetition portions of the tax year); *In re Dussing*, 205 B.R. 332, 333 (Bankr. M.D.Fla.1996) (ordering turnover of a prorated amount of an income tax refund received postpetition as a portion of the tax year preceded the filing of the bankruptcy case); *In re Orndoff*, 100 B.R. 516, 517–18 (Bankr.E.D.Cal.1989) (citing *Segal* and finding that the bulk of an income tax refund due to the debtor constituted property of the estate, based on a proration as

to that portion of the income tax refund attributable to prepetition withholdings). The bankruptcy court did not consider the *Segal* principles in ruling that WCFC's refund claim was a postpetition claim.

WCFC's refund claim was unliquidated prepetition, but it existed nonetheless.[20] The bankruptcy court based its ruling on an erroneous view of the applicable law. It erred in granting summary judgment to the trustee on the ground that the IRS failed to establish its right of setoff by finding that the IRS's debt arose postpetition.

b. *Material issues of fact exist as to mutuality.*

Based on the WCFC Offer to Waive, there is no question that the IRS is able to setoff the refund against the prepetition tax liabilities of WCFC.[21] The question before the bankruptcy court and now before us is whether the IRS may assert a setoff of the refund arising from losses incurred by WCFC against the prepetition tax liabilities of SMIL.

As the bankruptcy court recognized, mutuality is the critical issue in determining whether the IRS could assert and effectuate its right of setoff against WCFC and SMIL. The IRS contends that mutuality exists, in part, because of the substantive consolidation of the bankruptcy cases, which evidences that SMIL is the alter ego of WCFC.

---

20. The trustee advances an argument similar to the argument advanced by the debtor in *Braniff*. There, the debtor argued that the debt arose postpetition because it did not arise until the amount of an unused prepayment could be calculated, which was done postpetition. *Braniff*, 814 F.2d at 1035. The appellate court decided, however, that based on the above principles, the debt did not have to be calculated before the petition date in

order for setoff to be available to the creditor. *Id.* at 1035–36.

21. Contrary to the Summary Judgment Order, which stated that the IRS had no right of setoff against any prepetition tax liability owed by WCFC, in the WCFC Offer to Waive, the trustee explicitly agreed to an offset of WCFC's 1998 income tax liability against the refund.

Contrary to the IRS's assertion, substantive consolidation alone does not establish that SMIL was and is the alter ego of WCFC. Substantive consolidation is a mechanism whereby the assets and liabilities of two or more related entities are pooled to create a single fund from which creditors of the combined estate may receive distributions. *In re Bonham*, 229 F.3d 750, 764 (9th Cir.2000). Essentially, substantive consolidation ignores the corporate form in order to combine the assets and liabilities of entities whose businesses and/or finances are so intertwined that it makes no sense to disentangle them.

Accordingly, the substantive consolidation of WCFC and SMIL does not establish per se that SMIL was the alter ego of WCFC or vice versa. The bankruptcy court nonetheless erred in granting summary judgment in favor of the trustee, as the trustee herself presented factual evidence in declarations filed with the bankruptcy court in support of her Substantive Consolidation Motion, suggesting that SMIL may have been the alter ego of WCFC. The bankruptcy court granted the Substantive Consolidation Motion, and the IRS referenced the Substantive Consolidation Order several times in the Cross-Motion.

The Substantive Consolidation Motion and its supporting declarations were included in Exhibit C to the Declaration of Paul Ham (the "Ham Declaration") in support of the Motion to Alter. In the Motion to Strike Exhibits, the trustee moved to strike Exhibits B through M to the Ham Declaration, including Exhibit C. The bankruptcy court granted the Motion to Strike Exhibits without determining the admissibility of any of the subject exhibits. In fact, the bankruptcy court did not make any findings or rulings with respect to the exhibits either at the hearing on the Motion to Strike Exhibits or in the Motion to Strike Order, other than stating in the order that "good cause has been shown." Based on this record, it is not possible to determine the basis for the bankruptcy court's ruling, and we conclude that the bankruptcy court abused its discretion in granting the Motion to Strike Exhibits. Accordingly, we reverse the Motion to Strike Order, and we have considered the Substantive Consolidation Motion and its supporting declarations included as part of the record in this appeal. See *Golden Gate Hotel Ass'n*, 18 F.3d at 1485. *See also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir.1989); *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983).

In Washington, though courts ordinarily recognize a parent corporation as a legal entity distinct and separate from its subsidiary, courts may disregard the distinction between a parent corporation and its subsidiary when necessary to do justice in particular cases. *Kueckelhan v. Fed. Old Line Ins. Co.*, 69 Wash.2d 392, 418 P.2d 443, 456 (1966) (quoting *Superior Portland Cement, Inc. v. Pacific Coast Cement Co.*, 33 Wash.2d 169, 205 P.2d 597, 620 (1949)). Courts may disregard the corporate form (i.e., pierce the corporate veil) and hold a parent corporation liable for the actions of its subsidiary under either the doctrine of corporate disregard or the theory of alter ego.[22] *Compare Meis-*

---

22. Under the doctrine of corporate disregard (i.e., piercing the corporate veil), the parent corporation may be liable for the activities of its subsidiary where its subsidiary " 'has been intentionally used to violate or evade a duty owed to another.' " *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wash.2d 403, 645 P.2d 689, 692 (1982) (quoting *Morgan v. Burks*, 93 Wash.2d 580, 611 P.2d 751, 755 (1980)). When the separateness of corpora-

*el*, 645 P.2d at 692 (stating that the doctrine of corporate disregard applies when the corporation has been found "to have been intentionally used to violate or evade a duty owed to another"), *with Kueckelhan*, 418 P.2d at 456 (stating that courts will disregard the corporate form to defeat fraud or injustice on third parties " 'if one corporation so dominates and controls another as to make that other merely an adjunct to it' ") (quoting *Superior Portland Cement, Inc.*, 205 P.2d at 620).

 Merely that a corporation is the owner of the stock of another and that the two are intimately related in carrying on their business for the purpose of mutual benefit is not enough to characterize a corporation as the alter ego of the other corporation. *H.E. Briggs & Co. v. Harper Clay Products Co.*, 150 Wash. 235, 272 P. 962, 963 (1928) (quoting *First National Bank v. Walton*, 146 Wash. 367, 262 P. 984, 986 (1928)). Rather, there must be such a commingling of the affairs of two corporations as to work an injustice on third parties if their separate status is recognized, in order for the court to hold the two corporations are, in effect, one legal entity. *H.E. Briggs & Co.*, 272 P. at 963. " '[T]heir property rights [must be] so commingled and their affairs so intimately related in management as to render it apparent that they are, in fact and in intent, one, and, so related, to have them regarded otherwise would work a fraud upon third persons.' " *Id.* (quoting *First National Bank*, 262 P. at 986).

In the declarations filed in support of the Substantive Consolidation Motion, the trustee presented facts indicating that SMIL may have been the alter ego of WCFC. According to the trustee, the business operations of SMIL and WCFC were mixed, and there were few arm's length transactions between them. For example, in 2001, all of the employees working at the same office building in Seattle, Washington were employed by SMIL, regardless of whether their services benefitted WCFC or SMIL. Further, all of the overhead expenses for the office building in Seattle were incurred and paid by SMIL; there was no allocation of these expenses among the subsidiaries and parent corporation using the building.

The trustee also pointed out that the business and financial records of WCFC and SMIL were substantially commingled. SMIL routinely paid the obligations of WCFC and its other subsidiaries. WCFC and its subsidiaries used any available cash to fund the subsidiaries' operations; as a result, WCFC owed SMIL approximately $13 million. WCFC's payable to SMIL was comprised of funds borrowed for WCFC's various investments. In addition,

---

tions is disregarded, they are considered alter egos. Harris, *Washington's Doctrine of Corporate Disregard*, 56 Wash. L.Rev. 253 n. 2 (1981).

Two elements must be proved before a court may disregard the separateness of the corporate entities: (1) the corporate form must be intentionally used to violate or evade a duty; and (2) disregard is necessary to prevent unjustified loss to the injured party. *Meisel*, 645 P.2d at 692 (quoting *Morgan*, 611 P.2d at 756). With respect to the first element, the court must find an abuse of the corporate form, such as fraud, misrepresentation or some other kind of manipulation of the corporation for the benefit of the stockholder and to the detriment of the creditor. *Id.* (quoting *Truckweld Equip. Co. v. Olson*, [26 Wash.App. 638,] 618 P.2d 1017, 1021 (Wash.Ct.App.1980)). With respect to the second element, the wrongful activities of the corporation "must actually harm the party seeking relief so that disregard is necessary." *Id.* at 693. In other words, the corporation's intentional misconduct must be the cause of the harm. *Id.*

The IRS does not assert the doctrine of corporate disregard in its attempt to prove WCFC and SMIL should be treated as one and the same.

SMIL paid for a 1998 Chevy Suburban, though the vehicle title lists WCFC as the legal owner. Also, SMIL owes a debt of $3 million to Sun Life Assurance Company of Canada; to secure the debt, Sun Life has a first trust deed on the Seattle office building from which WCFC and its subsidiaries were operated, and a guaranty from WCFC.

The facts presented by the trustee in support of the Substantive Consolidation Motion suggest that SMIL may have been the alter ego of WCFC. And based on these facts, the bankruptcy court entered the Substantive Consolidation Order. The substantive consolidation of WCFC and SMIL in bankruptcy, as argued by the IRS, raises a material fact question as to whether WCFC and SMIL functioned as alter egos or one entity prepetition and should be treated as such for setoff purposes. Accordingly, we reverse the bankruptcy court's grant of summary judgment in favor of the trustee.[23]

On the same basis, we decline to reverse and remand the bankruptcy court's order denying summary judgment to the IRS. The IRS itself has raised issues of material fact that we, as the reviewing court, cannot decide. *See Tobin,* 258 B.R. at 202. We may neither weigh the evidence included in the record nor determine the truth of this matter, as the IRS has requested. *See Abdul–Jabbar,* 85 F.3d 407. Fact questions must be considered and weighed by the trier of fact. We affirm the bankruptcy court's denial of the Cross–Motion.

### 3. *Recoupment.*

The IRS advances recoupment as an additional ground for establishing and effectuating its right of setoff. Under the doctrine of recoupment, the IRS asserts a setoff right against both WCFC and SMIL as the estate's claim for a refund and the IRS's counterclaim for an offset arise out of the tax consequences that flow through the consolidated corporate tax returns of WCFC and SMIL over multiple tax years. In other words, according to the IRS, "the various years involved in [the] loss carryback make[ ] transactions from tax year to tax year related transactions." The trustee contests this argument on two grounds: (1) the IRS failed to plead recoupment in its answer; and (2) the IRS cannot assert recoupment because it cannot meet the required conditions.

The trustee contends that recoupment qualifies as an affirmative defense and/or counterclaim, which needs to be pleaded in an answer. Thus, she asks us not to consider the issue as the IRS, by failing to assert recoupment in its answer, waived it.

"[R]ecoupment 'is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.' " *Newbery,* 95 F.3d at 1399 (quoting 4 COLLIER ON

---

**23.** At oral argument, the IRS presented a new argument with respect to substantive consolidation. Under *Bonham,* substantive consolidation combines the assets of the consolidated debtors into one pool of assets against which the creditors of either debtor may satisfy their claims. Thus, according to the IRS, under *Bonham,* the IRS may set off the tax liabilities of SMIL against the refund of WCFC, as the refund has been merged into this common pool of assets.

Generally, although we will not consider matters not specifically and distinctly argued in an appellant's opening brief, *United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992), for the sake of completeness, we will address the IRS's new argument. Whether the pooling of assets through substantive consolidation allows a creditor to set off the debt of one of the consolidated debtors against the pool of assets containing assets of another consolidated debtor is an open question. *Bonham* simply does not deal with setoff rights under § 553.

BANKRUPTCY ¶ 553.03 (15th ed.1995) (emphasis in original)). Under recoupment, a defendant may meet a plaintiff's claim with a countervailing claim that arose out of the same occurrence or transaction as the plaintiff's claim. *Id.* "For this reason, recoupment has been analogized to both compulsory counterclaims and affirmative defenses." *Id. See also Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan),* 270 B.R. 749, 755 (9th Cir. BAP 2001) (stating that recoupment is the common law precursor to the compulsory counterclaim).

Rule 13(a) of the Federal Rules of Civil Procedure ("FRCP 13(a)") sets forth guidelines for asserting compulsory counterclaims. FRCP 13(a) characterizes a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FRCP 13(a) requires the defendant to assert a counterclaim in its responsive pleading or otherwise lose that counterclaim forever. 10 COLLIER ON BANKRUPTCY ¶ 7013.02 (15th ed. rev.2006).

Rule 7013 incorporates FRCP 13(a), with a few variations. *Reiter v. Cooper,* 507 U.S. 258, 265 n. 2, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Rule 7013 differs from FRCP 13(a) in that " 'a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief.' " *In re Merritt Logan, Inc.,* 109 B.R. 140, 143 (Bankr.E.D.Pa.1990) (quoting Rule 7013). Thus, if a trustee initiates an adversary proceeding against a creditor, who has a prepetition claim against the debtor, that creditor does not need to assert that claim as a counterclaim in its answer to the trustee's complaint. 10 COL-LIER ON BANKRUPTCY ¶ 7013.02 (15th ed. rev.2006).

The creditor may choose to assert prepetition claims by filing a proof of claim. *Merritt Logan, Inc.,* 109 B.R. at 143. Unlike FRCP 13(a), which mandates that a defendant plead a compulsory counterclaim or lose it, Rule 7013 recognizes bankruptcy claims procedures as applicable to prepetition claims. *Id.* at 144.

As the trustee points out, she chose to litigate the proofs of claim filed by the IRS by objecting to them in her complaint. Thus, according to the trustee, the IRS had to plead recoupment in its answer.

Assuming that the IRS's obligation to remit the refund arose postpetition (and we do not), the trustee would be correct that the IRS was required to plead its recoupment counterclaim in its answer in order to preserve it. However, we already have decided that the bankruptcy court erred in granting summary judgment in the trustee's favor.

Based on our review of the record, it appears that the bankruptcy court made no definite determination on the recoupment issue when it denied summary judgment to the IRS. On remand, the IRS can determine whether it wishes to move to amend its answer specifically to assert a recoupment claim. Evidence as to whether the concerned tax liabilities and refund claim arose out of the same transaction for recoupment purposes can be revisited in further proceedings before the bankruptcy court.

B. *The Bankruptcy Court's Rulings on the IRS's Motion to Alter and the Trustee's Motion to Strike Exhibits*

At the June 2, 2006 hearing, the bankruptcy court denied the IRS's Motion to Alter and granted the trustee's Motion to Strike Exhibits.

With respect to the bankruptcy court's ruling on the IRS's Motion to Alter, the bankruptcy court made no findings as to whether sufficient facts existed on the IRS's allegation that WCFC and SMIL were alter egos to merit reconsideration. We need not make any determination as to whether the bankruptcy court erred in denying the Motion to Alter, however, as we are reversing and remanding the Summary Judgment Order, rendering the IRS's appeal of the Motion to Alter Order moot.

With respect to the bankruptcy court's ruling on the trustee's Motion to Strike Exhibits, as discussed *supra*, we are reversing the Motion to Strike Order as an abuse of discretion.

## VI. CONCLUSION

The IRS raised genuine issues of material fact with respect to the issues of mutuality and timing in its attempt to establish and enforce its right of setoff. The bankruptcy court erred in granting summary judgment in favor of the trustee. Thus, we REVERSE the bankruptcy court's grant of summary judgment for the trustee and REMAND for further proceedings on the issues of mutuality and timing pursuant to § 553 and the issue of recoupment. We further REVERSE the bankruptcy court's Motion to Strike Order.

The bankruptcy court did not err in denying summary judgment in favor of the IRS, as genuine issues of material fact exist, as raised by the IRS itself. Thus, we AFFIRM the bankruptcy court's denial of summary judgment for the IRS.