In re WASHINGTON MUTUAL, INC., et al.,[1] Debtors.

**Nadia Youkelsone, Plaintiff,**

v.

**Washington Mutual, Inc.,[2] Defendant.**

Bankruptcy No. 08–12229 (MFW).

Adversary No. 09–50039 (MFW).

United States Bankruptcy Court, D. Delaware.

Oct. 8, 2009.

---

**1.** The Debtors in these chapter 11 cases are Washington Mutual, Inc., and WMI Investment Corp.

**2.** The caption of the Plaintiff's Complaint is titled "Nadia Youkelsone, Plaintiff against Washington Mutual, Inc., et al Defendant." "*Et al.*" is an abbreviation of the Latin term et *alia*, meaning "and others." However, the Plaintiff's Complaint does not name any specific party other than Washington Mutual, Inc., as a defendant, nor did Plaintiff serve process on any other party. Accordingly, Washington Mutual, Inc., is the only defendant in this action.

108

Nadia Youkelsone, pro se.

Lee E. Kaufman, Richards, Layton & Finger, P.A., Wilmington, DE, for Defendant.

### MEMORANDUM OPINION [3]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Defendant's Motion to Dismiss the Complaint filed by

---

3. The Court is not required to state findings or conclusions when ruling on a motion under Rule 12. Fed. R. Bankr.P. 7052(a)(3).

Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bank-

Nadia Youkelsone (the "Plaintiff"). For the reasons set forth below, the Court grants the Defendant's Motion.

## I. FACTUAL BACKGROUND

Defendant Washington Mutual, Inc. ("WMI"), a Washington corporation, was a savings and loan holding company whose primary asset was Washington Mutual Bank ("WMB"). On September 25, 2008, WMB's primary regulator, the Office of Thrift Supervision, seized WMB and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. Immediately following its appointment as receiver, the FDIC sold substantially all the assets and liabilities of WMB to JPMorgan Chase Bank, National Association ("JPM"). On September 26, 2008, WMI filed a petition for relief under chapter 11 of the Bankruptcy Code.

On January 21, 2009, the Plaintiff, proceeding *pro se*, instituted the instant adversary proceeding by filing a Complaint against WMI alleging the following:

- WMB owned and/or serviced the mortgage on the Plaintiff's two-family dwelling, located at 2644 East 18th Street, Brooklyn, New York. (Compl. ¶¶ 5–6.)

- In September 2001, the Federal National Mortgage Association ("FNMA") commenced a foreclosure action against the Plaintiff's property, claiming that the mortgage had been assigned to it from WMB. (Compl. ¶ 7.)

- FNMA and WMI continuously rejected the Plaintiff's request to allow her to sell the premises through a private sale. (Compl. ¶ 10.) The Plaintiff subsequently filed a petition for relief under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. (Compl. ¶¶ 11, 75.)

- On February 5, 2004, the Plaintiff entered into a workout plan with WMI and provided all the required documents and information. (Compl. ¶¶ 20–21.)

- WMI did not respond to the Plaintiff and made no determination on her application to cure the default. Instead, WMI moved to foreclose on the Plaintiff's premises and scheduled a foreclosure sale on February 26, 2004. (Compl. ¶¶ 22–23.)

- The Plaintiff subsequently obtained WMI's express permission to sell the property privately to a third party. (Compl. ¶ 24.) The proposed sale was for less than fair market value. (Compl. ¶ 27.)

- On June 21, and again on June 29, the Plaintiff requested the payoff statement and closing papers. (Compl. ¶¶ 29–31.) On June 30, WMI sent a letter to the Plaintiff demanding all sums due on the note. (Compl. ¶ 32.) Following WMI's demand letter, the Plaintiff unsuccessfully requested the payoff statement at least five more times. (Compl. ¶ 33.)

- On October 22, 2004, WMI again moved to foreclose on the property, scheduling an auction for November 18. (Compl. ¶ 34.)

- On October 24, 2004, WMI provided the Plaintiff with the payoff statement. (Compl. ¶ 37.) The statement included finance charges, attorneys' fees, private mortgage insurance charges, late fees, and other charges. (Compl. ¶ 38.)

Based on these allegations, the Plaintiff's Complaint asserts the following nine causes of action against WMI: (1) abuse of process; (2) breach of contract and implied warranties; (3) unjust enrichment; (4) consequential damages; (5) bad faith; (6) conduct in violation of New York Real Property Actions Proceedings Law

ruptcy Procedure but accepts the facts as averred in the Plaintiff's complaint.

§ 1921(4); (7) conduct in violation of the Truth in Lending Act, 15 U.S.C. § 1639; (8) misrepresentation, fraud, and deceit; and (9) intentional infliction of emotional harm.

On February 20, WMI filed a Motion to Dismiss the Complaint. The Plaintiff opposes the Motion. This matter has been fully briefed and is ripe for decision.

## II. *JURISDICTION*

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (O).

## III. *DISCUSSION*

WMI moves to dismiss the Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Bankr.P. 7012. WMI's argument, simply stated, is that the Plaintiff has sued the wrong party. Specifically, WMI argues that its status as the former parent corporation of WMB is insufficient to hold WMI liable for acts of its subsidiary, including the alleged acts in the Plaintiff's Complaint. WMI also contends that the Plaintiff has not made any showing that this Court should disregard the corporate form and find WMI liable for the alleged acts of its subsidiary WMB.

### A. *Standard on Rule 12(b)(6) Motion to Dismiss*

"Standards of pleading have been in the forefront of jurisprudence in recent years." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir.2009). With the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler*, 578 F.3d at 210.

In *Iqbal*, the Supreme Court makes clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in the federal courts. *See Fowler*, 578 F.3d at 208–10. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Iqbal*, 129 S.Ct. at 1949. Rather, "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal citations and quotations omitted).

After *Iqbal*, the Third Circuit has instructed this Court to "conduct a two-part analysis. First the factual and legal elements of a claim should be separated. The [reviewing court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210–11. Next, the reviewing court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (internal quotations omitted).

B. *Plausibility of Plaintiff's Claims for Relief*

Construing the Plaintiff's *pro se* Complaint liberally,[4] the Plaintiff alleges two alternative bases for WMI's liability. First, the Plaintiff alleges that WMI is *directly* liable to the Plaintiff for various wrongs related to the servicing of the Plaintiff's mortgage. Second, the Plaintiff alleges that WMI is *indirectly* liable for the actions of its banking subsidiary related to the servicing of the Plaintiff's mortgage.

### 1. *Direct Liability*

■ The Plaintiff's Complaint alleges that WMI, or literally, "the Defendants" engaged in misconduct related to the servicing of the Plaintiff's mortgage. For instance, the Plaintiff alleges that "the Defendants have engaged in the [sic] continuous scheme with intend [sic] to deprive Plaintiff of her property by unjustifiably rejecting and/or misapplying the Plaintiff's payments towards the mortgage." (Compl. ¶ 13.) The Complaint also alleges that "the Defendants intentionally manipulated its [sic] payment system in order to falsely represent to the court that the Plaintiff is in default." (Compl. ¶ 16). Likewise, virtually all of the Plaintiff's allegations allege wrongdoing by "the Defendants."

The Plaintiff alleges that "[t]he Defendants are a holder of the failed bank, Washington Mutual Bank," and "[t]he Defendant Washington Mutual, Inc., . . . is a parent corporation of [WMB]." (Compl.¶¶ 3–4.) As the Plaintiff's Complaint does not name any specific party other than WMI as a defendant, nor did Plaintiff serve process on any other party, the Court construes Plaintiff's allegations against "the Defendants" to be against WMI.

However, the allegations against WMI do not state a facially plausible claim for relief. The Plaintiff acknowledges that WMI was a savings and loan holding company, which owned WMB. (Compl. ¶¶ 3–4.) The Plaintiff also alleges that WMB was the owner and/or servicer of her mortgage, which WMB allegedly acquired in June 2001. (Compl. ¶¶ 4–5.) Yet the Plaintiff then alleges various misconduct by WMI related to the servicing of her mortgage. Such allegations do not state a plausible claim for relief, since it is not plausible for WMI to engage in misconduct related to the Plaintiff's mortgage when WMI did not own or service the Plaintiff's mortgage.

Accordingly, the Plaintiff's Complaint does not state a plausible claim for relief that WMI is directly liable to the Plaintiff for the misconduct related to the servicing of the Plaintiff's mortgage.

### 2. *Indirect Liability*

The Plaintiff, in her Complaint and papers, also asserts that WMI may be held indirectly liable for the acts of its subsidiary bank, WMB. Specifically, the Plaintiff asserts that: (1) WMI has affirmatively undertaken its subsidiary's duty, (2) WMI, as a parent corporation, is liable on a theory of unjust enrichment, and (3) the Court should disregard the corporate form and hold WMI liable for its subsidiary's fraudulent acts. (Pl.'s Opp'n 7–13.) The Plaintiff, however, has failed to assert any facts that would justify holding WMI indirectly liable for the Plaintiff's alleged injuries; rather she has asserted wrongdoing solely on the part of WMB.

---

4. *See, e.g., Alston v. Parker,* 363 F.3d 229, 234 (3d Cir.2004) (noting that *pro se* complaints in particular should be construed liberally).

### a. *Independent Duty Theory*

In her reply to the Motion to Dismiss, the Plaintiff asserts that the "defendant has affirmatively undertaken a duty of its subsidiary by negligently managing, controlling and directly operating the banking and [lending] practices of its subsidiary bank." (Pl.'s Opp'n 8–9.) As a procedural matter, the Court need not "consider after-the-fact allegations in determining the sufficiency" of the Plaintiff's Complaint under Rule 12(b)(6). *Frederico v. Home Depot,* 507 F.3d 188, 201–02 (3d Cir.2007). The Plaintiff may not now raise this argument against WMI as a basis to deny the Defendant's Motion to Dismiss. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo Inc.,* 836 F.2d 173, 181 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). As such, the Plaintiff may not raise new allegations of negligence by WMI in her papers as a basis to deny the motion to dismiss.

Moreover, even if properly pled, the "independent duty theory" fails to state a claim for relief. The Plaintiff cites the Restatement (Second) of Torts § 324A in support of her argument. Section 324A states that a party may be held liable for causing "physical harm" to third parties when one fails to exercise reasonable care while rendering services to another which are "necessary for the protection of [that] third person or his things." Restatement (Second) of Torts § 324A. However, courts have declined to expand the scope of this section to include non-physical harm. *See e.g., Sound of Mkt. St. v. Cont'l Bank Int'l,* 819 F.2d 384, 392 (3d Cir.1987) (concluding that liability in Pennsylvania under § 324A requires physical harm and mere economic harm is insufficient). Because the Plaintiff alleges only economic harm, rather than physical harm, her argument under the "independent duty theory" fails to state a claim even if properly pled in the Complaint.

### b. *Unjust Enrichment*

In Count III of the Complaint, the Plaintiff asserts that the Defendant should be held liable for WMB's purported acts because WMI was unjustly enriched by WMB's wrongdoing. (Compl.¶ 53–56.) A parent corporation may be liable for unjust enrichment based on the wrongful acts of its subsidiary once the subsidiary is liquidated and its affairs are settled. *See United States v. Dean Van Lines, Inc.,* 531 F.2d 289, 292 (5th Cir.1976) ("[T]he overcharge due the government is similarly among the assets of the subsidiary . . . and cannot reach the coffers of the parent until the subsidiary is liquidated and its affairs settled."). Here, WMB was seized by its primary regulator, the Office of Thrift Supervision. Since WMB was seized by a governmental entity, rather than sold by WMI, WMI did not receive any proceeds from this sale. Accordingly, the Plaintiff fails to state a plausible claim that WMI was unjustly enriched by any purported misconduct by WMB.

### c. *Disregarding the Corporate Form*

The Plaintiff also asserts that the Court may disregard the corporate form in order to hold WMI liable for the wrongdoing of WMB. Applying Delaware's choice of law rules, a court sitting in Delaware must look to the state of incorporation of a company to determine whether the relationship between the corporate entity and its stockholders can give rise to liability of the stockholders for the conduct of the corporate entity. *Rosenmiller v. Bordes,* 607 A.2d 465, 468 (Del.Ch.1991). Both WMI and WMB are incorporated in the state of Washington.

Under Washington law, parent corporations generally are recognized as distinct legal entities separate from their subsidiaries. *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 598 (9th Cir. BAP 2007). Courts may, however, disregard the corporate form and hold a parent corporation liable for the actions of its subsidiary under either the doctrine of corporate disregard or the theory of alter ego. *Id.*

### i. Doctrine of Corporate Disregard

Under the doctrine of corporate disregard, a court may find a parent liable for acts of a subsidiary if (1) the corporate form was intentionally abused through fraud or manipulation to violate or evade a duty owed to another and (2) the corporation's intentional misconduct caused harm to the party seeking relief such that disregard of corporate separateness is necessary. *See id.* at 598 n. 2.

In this case, the Plaintiff's Complaint fails to state a plausible claim to disregard the corporate form under the doctrine of corporate disregard. In particular, the Plaintiff fails to allege any facts showing that the corporate form was used to violate or evade a duty. The Plaintiff asserts that there are grounds to disregard the corporate form and hold WMI liable for WMB's alleged conduct because of fraud related to the servicing of the Plaintiff's mortgage. (Compl. ¶¶ 74–77; Pl.'s Opp'n 12–13.)

Construed literally, the Plaintiff's Complaint contains no allegations of misconduct by WMB. The Plaintiff asserts that WMI was the parent corporation of WMB, overseeing, managing, controlling and supervising all operations of WMB. (Compl. ¶¶ 3–4.) In addition, the Plaintiff alleged that WMB owned and/or serviced the Plaintiff's mortgage. (Compl. ¶¶ 5–6.) The remainder of the Plaintiff's Complaint alleges various wrongdoing by WMI, not WMB. For example, the Plaintiff states

that "the Defendants" have "unjustifiably reject[ed] and/or misappl[ied] the Plaintiff's payments towards the mortgage." (Compl. ¶ 13.) Further, the Plaintiff claims that "the Defendants" "falsely claim[ed] that the Plaintiff is on [sic] default and by continu[ed] action with intend [sic] to 'end-run' around the mortgage contract" and "intentionally manipulated [their] payment system in order to falsely represent to the court that the plaintiff is in default." (Compl. ¶ 14, 16.) WMB is not a named defendant in the Complaint. Consequently, the Plaintiff's Complaint, taken literally, fails to allege any misconduct attributable to WMB.

However, as discussed above, it is not plausible for WMI to engage in misconduct related to servicing the Plaintiff's mortgage because, according to the Plaintiff's own allegations, WMI did not own or service the Plaintiff's mortgage. Accordingly, for the purposes of analyzing whether the Complaint states a plausible claim for relief for disregarding the corporate form, the Court will construe the various allegations of misconduct related to the servicing of Plaintiff's mortgage as allegations of misconduct by WMB, not WMI. *See, e.g. Alston,* 363 F.3d at 234 (noting that *pro se* complaints in particular should be construed liberally); *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 184 (3d Cir.2000) ("Courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner.").

When the corporate form has been used to defraud third parties, the corporate form may be disregarded to avoid injustice. *Wade Cook,* 375 B.R. at

598 n. 2. To disregard the corporate form, however, the fraud must relate to the corporate form itself. *See Omni Innovations, LLC v. Impulse Mktg. Group, Inc.*, 2007 WL 2110337, at *2 (W.D.Wash.2007). A mere assertion of fraud on the part of a subsidiary does not constitute an abuse of the corporate form. *Trevino v. Merscorp, Inc.*, 583 F.Supp.2d 521, 530 (D.Del.2008). Accordingly, the Court concludes that the Plaintiff's Complaint does not state a plausible claim for relief under the doctrine of corporate disregard.

### ii. *Alter Ego Theory*

 Under the theory of alter ego, a court may disregard the corporate form to defeat fraud or injustice to third parties "if one corporation so dominates and controls another as to make that other merely an adjunct to it." *Superior Portland Cement, Inc. v. Pac. Coast Cement Co.*, 33 Wash.2d 169, 205 P.2d 597, 620 (1949).

> Merely that a corporation is the owner of stock of another and that the two are intimately related in carrying on their business for the purpose of mutual benefit is not enough to characterize a corporation as the alter ego of the other corporation. Rather, there must be such a commingling of the affairs of two corporations as to work an injustice on third parties if their separate status is recognized.... Their property rights must be so commingled and their affairs so intimately related in management as to render it apparent that they are, in fact and in intent, one, and, so related, to have them regarded otherwise would work a fraud upon third persons.

*Wade Cook*, 375 B.R. at 599 (internal quotations and citations omitted).

In this case, the Plaintiff's Complaint fails to state a plausible claim to disregard the corporate form under an alter ego theory. The Plaintiff asserts that WMI was the parent corporation of WMB, overseeing, managing, controlling and supervising all operations of WMB. (Compl. ¶¶ 3–4.) Yet merely asserting that a corporation is "the owner of stock of another and that the two are intimately related in carrying on their business for the purpose of mutual benefit is not enough to characterize a corporation as the alter ego of another corporation." *Wade Cook*, 375 B.R. at 599. Instead, the Plaintiff must show "such a commingling of the affairs of the two corporations as to work an injustice on third parties if their separate status is recognized." *Id.*

Beyond the conclusory statement that WMI oversaw, managed, controlled and supervised all operations of WMB, the Complaint contains no factual allegations which would lead to a plausible inference that WMI directed WMB to engage in misconduct related to the servicing of the Plaintiff's mortgage. The Court need not accept as true any conclusory statements or legal conclusions in the Complaint. *See Iqbal*, 129 S.Ct. at 1949–50; *Fowler*, 578 F.3d at 210–11. Accordingly, the Court concludes that the Plaintiff's Complaint fails to state a plausible claim to disregard the corporate form under an alter ego theory.

Accordingly, the Plaintiff's Complaint does not state a plausible claim for relief that WMI is liable to the Plaintiff for any misconduct of WMB related to the servicing of the Plaintiff's mortgage.

## IV. *CONCLUSION*

For the reasons set forth above, the Court will grant the Defendant's Motion to Dismiss. This dismissal is without prejudice to the Plaintiff filing within 30 days an amended complaint which adequately pleads facts to support her claim.

An appropriate order is attached.

## ORDER

**AND NOW,** this 8th day of **OCTOBER, 2009,** upon consideration of the Motion to Dismiss filed by the Defendant and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Defendant's Motion to Dismiss is **GRANTED.**

cc: Mark D. Collins, Esquire [1]

1. Counsel shall serve a copy of this Order and the accompanying Memorandum Opinion on all interested parties and file a Certificate of Service with the Court.