NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: )<br><br>RCS CAPITAL DEVELOPMENT, LLC; )<br>AMERICAN CHILDCARE PROPERTIES,)<br>LLC; ACCP I, LLC, )<br> )<br>        Debtors. )<br>_____)<br>A.B.C. LEARNING CENTRES LTD.; )<br>ABC DEVELOPMENTAL LEARNING )<br>CENTERS (USA), INC., )<br> )<br>        Appellants, )<br> )<br>v. )<br> )<br>RCS CAPITAL DEVELOPMENT, LLC; )<br>AMERICAN CHILDCARE PROPERTIES,)<br>LLC; ACCP I, LLC, )<br> )<br>        Appellees. )<br>_____) | BAP No.  AZ-12-1381-JuTaAh<br><br>Bk. No.  11-28746-RJH<br>(jointly administered with<br>11-29741-RJH, 11-29742-RJH)<br><br><br><br><br><br><br><br>M E M O R A N D U M* |

Argued and Submitted on June 21, 2013
at Phoenix, Arizona

Filed - July 16, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Randolph J. Haines, Chief Bankruptcy Judge, Presiding
_____

Appearances:      Carson T.H. Emmons Esq., of Baird, Williams &
Greer, LLP, argued for Appellees RCS Capital
Development, LLC, American Childcare Properties,

_____

        * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

LLC and ACCP I, LLC.[**]
_____

Before:  JURY, TAYLOR, and AHART[***], Bankruptcy Judges.

Appellants, A.B.C. Learning Centres Limited (ABC Learning) and its affiliate, ABC Developmental Learning Centers (U.S.A.), Inc. (ABC USA) (collectively, ABC), filed a proof of claim (POC) in an amount not less than $41 million in each of the jointly administered chapter 11[1] bankruptcy cases of RCS Capital Development, LLC (RCS), American Childcare Properties, LLC (ACCP), and ACCP I, LLC (collectively, ACCP and ACCP I, LLC are referred to as ACCP).

ABC's claim arose out of a pending lawsuit filed by ABC against ACCP, RCS, Kenneth Krynski (Krynski) and Las Vegas CLA Partners, Ltd. (CLA Partners) in the Nevada district court (Nevada Action), which asserted eighteen claims for relief, including, among others, claims for actual and constructive fraudulent transfers, constructive/resulting trust, breach of contract, and various intentional torts.  RCS and ACCP filed a

[**] John J. Fries and Joshua L. Kahn of Ryley Carlock & Applewhite and Andrew Rosenblatt and Eric Daucher of Chadbourne & Parke LLP appeared on brief for Appellants A.B.C. Learning Centres Ltd. and ABC Developmental Learning Centers (USA), Inc. Appellants chose not to appear at argument in accordance with the Panel's June 11, 2013 order.

[***] Hon. Alan M. Ahart, United States Bankruptcy Judge for the Central District of California, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

counterclaim in the case.

After objecting to ABC's POCs, RCS filed a motion for summary judgment (MSJ), contending that it was entitled to set off its claim against ABC for $57 million arising out of a liquidated judgment that it obtained in Arizona against ABC's POC for $41 million that was based on the Nevada Action. ABC filed a cross-motion for partial summary judgment asserting legal and equitable defenses to the setoff. The bankruptcy court granted RCS's MSJ and denied ABC's cross MSJ by two separate orders. ABC sought reconsideration of both orders. The bankruptcy court entered an amended summary judgment order on July 12, 2012, denying ABC's motion for reconsideration. This appeal followed.[2]

For the reasons stated below, we AFFIRM the bankruptcy court's rulings granting RCS's MSJ allowing the setoff and denying ABC's cross MSJ. However, because the petition date is the proper date for converting ABC's claim to U.S. Dollars under § 502(b), we REVERSE the bankruptcy court's decision on the amount of ABC's claim and REMAND so that the court can calculate the proper amount.

## I. FACTS

ABC Learning and its affiliates were operators of childcare centers in Australia, New Zealand, the United States and the United Kingdom. Edmund Groves, the former CEO of ABC Learning,

---

[2] This appeal is related to BAP No. AZ-1626-JuTaAh, which is an appeal by ABC from the bankruptcy court's order confirming the Fifth Amended chapter 11 plan filed by RCS, ACCP, and ACCP I, LLC. A separate memorandum addresses that appeal.

-3-

purchased his first child care center on the Gold Coast in Australia in 1987. Eventually he had thirty locations when he took ABC Learning public in 2000. By 2004, ABC Learning had over 300 locations in Southeast Asia, the South Pacific, and other commonwealth countries. ABC Learning maintained interests in the United States through operation of ABC USA and by acquiring all the stock of a publicly traded company called the Learning Care Group (LCG), located in Novi, Michigan. LCG through its various subsidiaries, primarily Tudor Time, was a for profit childcare and early education provider with over a thousand corporate and franchise childcare centers located throughout the United States.

In February 2008, ABC missed its revenue projections by over 43% which left it in a precarious financial situation.

**A.    RCS's Claim Against ABC:  The Arizona Action**

Rick and Cheryl Sodja were the owners of the largest Tutor Time franchise operation under the umbrella of LCG. After acquiring LCG, ABC Learning approached the Sodjas seeking to purchase their franchises and enter into a development agreement with them whereby the Sodjas would assist in expanding LCG's Tudor Time sites throughout the United States. Not knowing about ABC's financial difficulties, in June 2008 the Sodjas entered into an agreement with ABC Learning. Under the agreement, ABC Learning agreed to pay the Sodjas $70 million for their twenty-six operating Tudor Time sites and another $100 million or so for sites to be developed around the United

-4-

States.[3]  The Sodjas then formed, or had already formed, RCS, an Arizona limited liability company, for the purpose of developing child care facilities in the United States for ABC Learning.  In September 2008, ABC breached the development agreement.

On October 20, 2008, RCS sued ABC in the Arizona Superior Court for breach of contract (Arizona Action).  On May 14, 2010, RCS won a jury verdict of over $47 million in damages and was awarded attorneys' fees and costs.  On December 22, 2010, the state court entered the judgment.  As of February 17, 2012, the total amount due and owing on the judgment was in excess of $57 million.

ABC appealed the decision to the Arizona Court of Appeals and RCS cross-appealed on the denial of pre-judgment interest on the verdict.  On June 12, 2012, the Arizona Court of Appeals issued a decision upholding the jury's verdict, affirming the award of attorneys' fees and costs (except for a three percent enhancement fee), and affirming the denial of pre-judgment interest on the verdict.

**B.    ACCP**

Krynski, a Las Vegas developer, and Groves, the former CEO of ABC Learning, became friends and eventually business

---

[3] In essence, the Sodjas were becoming development partners with ABC in the United States through ABC's wholly-owned subsidiary, LCG.  This initial agreement was evidently renegotiated when ABC Learning sought to sell 60% of its interest in LCG to Morgan Stanley Private Equity (Morgan Stanley) due to its financial problems.  Rather than enter into the development agreement with LCG, the Sodjas entered into a development agreement with ABC USA and ABC Learning and signed a release with respect to LCG.

partners. In March 2006, Krynski formed ACCP, a Nevada limited liability company, of which he was the sole member. ACCP and LCG then entered into a joint venture whereby ACCP would purchase and develop child care properties on behalf of LCG. Because ACCP did not have its own source of funding, beginning in early 2006, ABC Learning began advancing money to ACCP to facilitate the purchase of properties in Nevada and Virginia. Between March 2006 and June 27, 2008, ABC Learning advanced ACCP approximately AUD$41 million. ACCP also developed childcare centers on several of the properties using funds obtained from ABC Learning.

In late June 2008, due to its precarious financial condition, ABC Learning entered into a purchase agreement with Morgan Stanley whereby Morgan Stanley would purchase 60% of ABC Learning's interest in LCG for USD$240 million, cash.

In connection with ABC's sale of 60% of its stock in LCG, ABC and ACCP redefined and re-characterized their prior agreements. On June 25, 2008, ACCP, ABC, and LCG entered into a Termination and Release Agreement (Termination Agreement) that was designed to terminate the parties' prior oral development arrangements. According to the Termination Agreement, the parties were released from any obligations or liabilities that arose under previous agreements.

On June 29, 2008, ABC USA and ACCP entered into a deed of acknowledgment (Deed of Acknowledgment) which allegedly re-established the parties' obligations relative to the ABC funds already advanced. The Deed of Acknowledgment required ACCP to purchase eleven properties throughout the United States

-6-

and develop and construct childcare centers on them. Upon completion and satisfaction of certain conditions, the properties were then to be transferred to ABC USA and the value of the property deducted from ACCP's debt to ABC USA. Alternatively, ACCP could sell the properties to third parties, so long as sale proceeds were remitted to ABC.

In August 2008, ACCP transferred one of the properties for $1.8 million, but did not remit the proceeds to ABC. In October 2008, ACCP transferred another property and again did not remit the proceeds to ABC.

**C.    The ACCP and RCS Merger**

Meanwhile, RCS commenced steps to acquire Krynski's membership interest in ACCP for the purpose of obtaining setoff rights against ABC in connection with the Arizona Action.[4] In the first step of the transaction, RCS offered to pay Krynski $4.7 million for his membership interest in ACCP. In the second step, RCS, as the managing member of ACCP, would dissolve ACCP, distribute its assets in liquidation to its members (itself), and assume all debts and liabilities, including the $41 million allegedly owed by ACCP to ABC under the Deed of Acknowledgment. According to RCS, this arrangement ensured that ABC would be paid for the money it loaned to ACCP; either it would be offset against RCS's Arizona claims or RCS, having assumed the liability, would pay it directly.

On November 11, 2008, RCS and ACCP executed their

---

[4] Apparently, realizing that it was an unsecured creditor of ABC, RCS began taking steps to establish its setoff rights before the Arizona Action was completed.

agreement. RCS purchased Krynski's interest for $4.7 million in cash and property. The agreement required RCS to keep certain employees of ACCP for one month following the acquisition. RCS and ACCP then merged by means of two Dissolution, Distribution, and Liquidation Agreements. The title to the properties ACCP acquired with ABC's funds became vested in RCS upon merger and ACCP ceased doing business.

**D. ABC's Australian Insolvency Proceeding**

Prior to execution of the RCS agreement with Krynski, on November 6, 2008, ABC Learning commenced voluntary administrations (a type of insolvency proceeding) under Australian law for itself and each of its Australian subsidiaries and receivers and managers were appointed.

On December 11, 2008, the receiver and manager in ABC Learning's Australian proceeding sent a letter to ACCP, stating that it would no longer purchase ACCP's properties. Instead, ACCP was to pay back the loans with cash to ABC Learning. The same letter acknowledged the receipt of funds from a property ACCP previously sold. The exchange rate as of October 2008 was used to calculate the remaining debt owed by ACCP, which by then had merged with RCS. The receiver demanded the sum of AUD$39 million to be paid to ABC Learning within seven days of the letter. That amount was never paid.

**E. ABC's Claim Against RCS: The Nevada Action**

In March 2009, ABC filed the Nevada Action against ACCP, RCS, Krynski and CLA Partners, asserting a constructive trust claim over the properties ACCP purchased with ABC's funds along with other claims. At the same time, ABC recorded a lis pendens

-8-

against the properties previously owned by ACCP. RCS filed a motion to expunge the lis pendens which the Nevada court denied in an order dated September 10, 2009 (Lis Pendens Order). "In the Lis Pendens Order the Nevada court also found that (1) the constructive trust claim affects the title or possession of the [p]roperties; (2) ABC Learning would be injured by a transfer of an interest in the [p]roperties before the Nevada Action was concluded; and (3) ABC Learning established that it was likely to prevail on the merits of the constructive trust claim." See In re ABC Learning Centres Ltd., 2011 WL 4899789, at *2 (Bankr. D. Del. 2011).[5] Despite this ruling, RCS subsequently sold one property in March 2011 and two properties in June 2011 subject to the lis pendens. Id.

**F. ABC's Chapter 15 Proceeding**

On May 26, 2010, twelve days after the jury verdict in the Arizona Action was rendered in favor of RCS, ABC's Australian administrators petitioned the Delaware bankruptcy court for chapter 15 recognition of the insolvency proceedings in Australia to protect their assets from RCS's judgment.[6] RCS

_____

[5] We take judicial notice of the Delaware bankruptcy court's decisions in ABC's chapter 15, Bankr. Case No. 10-11711, which was listed as a related case in the parties' certifications pursuant to BAP Rule 8010(A)1-(C). See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). This written decision of the Delaware bankruptcy court described what had occurred in the Nevada case.

[6] Subsequent to the filing of the petition in the Delaware (continued...)

-9-

objected to recognition and the imposition of the stay and, alternatively, moved for relief from stay in the proceeding so that it could reduce its jury verdict in the Arizona Action to a judgment and assert a setoff of the judgment as a defense in the Nevada Action.

The Delaware bankruptcy court granted ABC's petition, recognizing the Australian liquidations as foreign main proceedings. Upon recognition, the court found that the automatic stay applied to ABC and its properties within the territorial United States. ABC Learning Centres Ltd., 445 B.R. 318, 336 (Bankr. D. Del. 2011) (citing § 1520(a)(1)).

The Delaware bankruptcy court granted RCS's motion for relief from stay for the limited purpose of reducing the Arizona verdict to judgment and asserting the resulting judgment as a setoff in the Nevada Action. The court noted:

> Section 553(a) of the Code does not create an independent federal right to setoff, but merely preserves whatever setoff rights may exist under applicable state law. Here, the merits of any setoff defense asserted by RCS in the Nevada Litigation are properly determined by the Nevada Court. Based on the parties' arguments, the Court is convinced that RCS has at least a slight probability of success in receiving recognition of setoff by the Nevada Court, and therefore meets this requirement. Furthermore, even if the Court were to abstain from any conjecture regarding RSC's likely success in asserting setoff, the totality of the circumstances supports granting relief. All other factors in the Court's analysis strongly favor granting RCS's request for relief, and this Court finds it appropriate to leave the analysis and application of Nevada law to the Nevada Court.

---

[6](...continued)
bankruptcy court, ABC's creditors converted the voluntary administrations in Australia to liquidations. The Delaware bankruptcy court gave recognition to these liquidation proceedings under chapter 15 of the Bankruptcy Code.

_Id._ at 338-39. The bankruptcy court entered the order granting recognition of foreign proceedings and related relief on November 15, 2010.

The Delaware bankruptcy court later found that RCS's sale of three properties, which were subject to the lis pendens, was a violation of the stay based on ABC's "interest" in the properties protected by the lis pendens. The bankruptcy court reserved the issue of damages until later because a hearing was scheduled for November 1, 2011, in the Nevada district court to decide whether RCS held the properties in a constructive trust for the benefit of ABC. _See_ _In re ABC Learning Centres Ltd._, 2011 WL 4899789, at *2-3.

**G. RCS's Bankruptcy Filing**

Less than a month before the Nevada court's scheduled hearing, RCS filed a chapter 11 proceeding in the District of Arizona on October 12, 2011.

On October 24, 2011, ACCP and ACCP I filed their chapter 11 petitions in the District of Arizona. On the same day, RCS moved for joint administration of the three bankruptcy cases. On October 27, 2011, the bankruptcy court entered the order granting RCS's motion for joint administration.

ABC filed a POC for $41 million in all three bankruptcy cases based on its claims for relief asserted against the parties in the Nevada Action. RCS submitted a "joint" plan of reorganization that would pay the ABC claim by setoff of their mutual debts.

RCS filed an objection to ABC's POCs, asserting that some were duplicative and that the $41 million amount should be

-11-

reduced to $39 million as of December 11, 2008, the alleged breach date, based on the exchange rate on that date. ABC responded, contending that its claims were not duplicative and that the exchange rate prevailing on the petition date was the relevant rate for converting its claims to U.S. dollars. Using that rate, ABC maintained that its claim was approximately $42 million.

**The Cross Motions For Summary Judgment**

On February 17, 2012, RCS moved for summary judgment, contending that it was entitled to set off the alleged debt owed to ABC arising out of the Nevada Action against ABC's debt owed to RCS arising out of the Arizona Action. Although RCS questioned the validity of ABC's claim, RCS conceded the obligation for purposes of summary judgment on the setoff issue. RCS argued that both Nevada and Australian law provided for the setoff of mutual debts and further asserted that all requirements for setoff were met as a matter of law. RCS challenged ABC's fraudulent transfer claims on the grounds that it had paid consideration for ACCP's assets and assumed its liabilities, including the debt owed to ABC. RCS further maintained that ABC could not have been defrauded when the net effect of the setoff was that ABC ended up owing RCS $30 million. Finally, RCS argued there was nothing to litigate in connection with the breach of contract or related claims because it conceded for the purpose of the motion that it owed the money to ABC.

On March 9, 2012, ABC cross-moved for partial summary judgment, arguing that setoff was rendered unenforceable by

-12-

§ 553(a)(3) because any debt RCS owed to the ABC creditors was incurred after November 6, 2008, when ABC was placed into administration in Australia. ABC further asserted that (1) enforcing any right of setoff would be inequitable; (2) the purported right to setoff was barred by Australian law; (3) RCS's debt to ABC was the result of fraudulent transfers; (4) the properties transferred to RCS should be held in constructive trust for the benefit of ABC's creditors; and (5) setoff should not be allowed because RCS's debt to ABC was the result of intentional torts. In addition, ABC argued that there was no mutuality of debts between ABC and RCS prior to RCS's dissolution of ACCP.

On March 19, 2012, ABC filed a response to RCS's MSJ, raising the same arguments and alleging the same facts it had asserted in its cross MSJ.

On April 3, 2012, in its reply to ABC's opposition to its MSJ, RCS asserted that it acquired its setoff rights by de facto merger.

On May 22, 2012, the bankruptcy court heard the matter and granted RCS's motion, finding that RCS's purchase of Krynski's membership interest and subsequent assumption of liabilities in the Dissolution, Distribution and Liquidation Agreements, was a de facto merger and that there was no applicable defense to setoff that's been asserted and adequately supported for summary judgment purposes. Turning to ABC's cross MSJ, the court wondered if it was moot in light of the ruling on RCS's motion. "I'll here [sic] from ABC on the other motion for summary [judgment], but I think maybe the first question is does that

-13-

ruling moot the issue?" Hr'g Tr. 5/22/12 at 37:10-12. Nevertheless, the court heard ABC's arguments and denied its cross MSJ:

> It's ordered denying the motion for summary judgment on fraudulent transfer grounds. I believe at best there exists a fact question regarding an alleged intent not to pay the debt as indicated in colloquy. I do believe that there was an intent to exercise a setoff depending on timing that may have been an intent to obtain a preference, but I don't find that adequate showing has been made for summary judgment purposes that such an intent to obtain a setoff even if preferential is a fraudulent transfer of either the constructive or altered variety. But at best, there remain fact questions on that so I am denying summary judgment. Hr'g Tr. 5/22/12 at 55:23-25; 56:1-9.

Since its ruling on the setoff issue resolved ABC's breach of contract and constructive trust claims, the court found them moot. On June 8, 2012, the bankruptcy court entered an order granting RCS's MSJ and allowing RCS to setoff its claim against ABC based on the Arizona judgment against ABC's POC, leaving over $30 million still owing to RCS. The court dismissed with prejudice ABC's claims against RCS and quashed and declared as void ab initio any and all lis pendens filed by ABC against RCS's properties wherever located. On the same day, the bankruptcy court entered an order denying ABC's cross MSJ.

ABC moved for reconsideration. RCS conceded that the amount of the attorneys' fees should be recalculated in light of the Arizona Court of Appeals' disallowance of the enhancement award in the amount of $1,640,000. On July 12, 2012, the bankruptcy court denied ABC's motion for reconsideration, but recalculated the principal balance owed on the judgment as of May 22, 2012, as USD$31,659,237.85 and found that ABC was liable to RCS for USD$28,486,206.64. The court dismissed with

-14-

prejudice ABC's causes of action against RCS and again declared as void ab initio any and all lis pendens filed by ABC against RCS's property wherever located.

ABC timely appealed from that order.  ABC then moved for a stay pending appeal.  At the August 6, 2012 hearing on the matter, the bankruptcy court denied the motion.  ABC did not seek a stay in this court.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (C).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.  Whether the bankruptcy court erred in granting RCS's MSJ for setoff;

B.  Whether the bankruptcy court erred in denying ABC's cross MSJ on the legal and equitable defenses asserted; and

C.  Whether the bankruptcy court erred in calculating the amount of ABC's claim by using the "breach date" for converting ABC's claim to U.S. dollars rather than the petition date as stated in § 502(b).

## IV.  STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of a motion for summary judgment.  Danning v. Miller (In re Bullion Reserve of N. Am.), 922 F.2d 544, 546 (9th Cir. 1991).

Although disputes over the amount of a claim may involve factual questions, here the calculation was an error of law because the bankruptcy court chose the wrong date for applying the exchange rate to ABC's claim.  Whether § 502(b) requires the

-15-

court to determine the amount of a claim in lawful currency of the United States as of the date of the filing of the petition is a question of statutory interpretation subject to de novo review. Onink v. Cardelucci (In re Cardelucci), 285 F.3d 1231, 1233 (9th Cir. 2002).

## V.   DISCUSSION

In reviewing the bankruptcy court's decision on a motion for summary judgment, we apply the same standards as the bankruptcy court. Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Civil Rule 56, incorporated by Rule 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, could affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When faced with cross-motions for summary judgment, the [bankruptcy] court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

## A.   Setoff Rights Under the Bankruptcy Code

"Right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" Citizens Bank of Maryland v. Strumpf, 516 U.S.

-16-

16, 18 (1995)(citing <u>Studley v. Boylston Nat. Bank</u>, 229 U.S. 523, 528 (1913)). "It is a procedural or remedial device employed by a court to dispose of rival claims by litigants before the court. Instead of issuing rival judgments, the court, if satisfied of the enforceability of each separate claim, applies the amount that would have been given in judgment on one claim against the amount that would have been given in judgment on the other claim, to arrive at a balance due or net figure which is declared owing in a single judgment." <u>In re Hancock</u>, 137 B.R. 835 (Bankr. N.D. Okla. 1992).

The Bankruptcy Code preserves the right of setoff for creditors under § 553. Section 553 authorizes setoff of mutual debts by a creditor when three conditions are met: "'(1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual.'" <u>United States v. Carey (In re Wade Cook Fin. Corp.)</u>, 375 B.R. 580, 588 (9th Cir. BAP 2007). For setoff to apply, "'each debt or claim sought to be offset must have arisen prior to the filing of the bankruptcy petition'" and for mutuality to exist the debts and claims must be "'in the same right and between the same parties, standing in the same capacity.'" <u>Id.</u>

The Code preserves a debtor's right to effectuate a setoff under § 558, as it exists under state law. <u>In re TSLC I, Inc.</u>, 332 B.R. 476, 478 (Bankr. M.D. Fla. 2005) ("Courts have found that section 558 preserves to the debtor any prepetition defenses a debtor may have, including any right to setoff."); <u>In re Westchester Structures, Inc.</u>, 181 B.R. 730, 739-40 (Bankr. S.D.N.Y. 1995)("Section 558 of the Bankruptcy Code also

-17-

preserves for the benefit of the estate any right to setoff the debtor may have."). Because there is no restrictive language in § 558 confining setoff to prepetition debts, courts have concluded that a debtor may set off prepetition claims against postpetition obligations that it owes. See State Bank of Florence v. Miller (In re Miller), 459 B.R. 657, 675 n.16 (6th Cir. BAP 2011); In re Women First Healthcare, Inc., 345 B.R. 131 (Bankr. D. Del. 2006) (citing In re Papercraft Corp., 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991)); In re ABC-NACO, Inc., 294 B.R. 832, 838 (Bankr. N.D. Ill. 2003); In re PSA, Inc., 277 B.R. 51, 53 (Bankr. D. Del. 2002).

Although RCS is a creditor of ABC, it cannot be using § 553 to achieve setoff in its own capacity as a creditor in its own case. Rather, RCS — a chapter 11 debtor — is asserting its prepetition defense of setoff against ABC's claims asserted against RCS in the Nevada Action. We thus conclude that § 558 is the applicable statute in this case.[7]

**B.    Nevada Law Preserved RCS's Right to Setoff**

Under § 558, RCS's setoff rights are determined under non-bankruptcy law. In re PSA, Inc., 277 B.R. at 54 ("[A] right to setoff must be established under state law so that the debtor then may assert the setoff as a defense reserved by § 558."); see also Camelback Hosp., Inc. v. Buckenmaier

---

[7] As a result, it is unnecessary for us to resolve the dispute between the parties regarding which petition date, as between RCS and ABC, is the applicable date for purposes of determining whether RCS incurred the alleged debt owed to ABC prepetition or postpetition. Otherwise, whether § 553 or § 558 applies probably makes little difference to the outcome of this case.

(In re Buckenmaier), 127 B.R. 233, 237 (9th Cir. BAP 1991) ("[T]he Code does not create or expand the setoff right but instead merely preserves the common-law right under applicable non-bankruptcy law.").

RCS's asserted setoff defense arises out of the Nevada Action which is the basis for ABC's POC. Nevada recognizes the common law right of setoff.[8]

> 'Setoff is a form of counterclaim which a defendant may urge by way of defense or to obtain a judgment for whatever balance is due.' Setoff is a doctrine used to extinguish the mutual indebtedness of parties who each owe a debt to one another. In fact, the claims that give rise to a setoff need not arise out of the same transaction; they may be entirely unrelated.

Aviation Ventures, Inc. v. Joan Morris, Inc., 110 P.3d 59, 63 (Nev. 2005). Nevada law requires that each party must have a valid and enforceable debt against the other for setoff to apply. Id.

RCS has a valid and enforceable judgment debt against ABC obtained in the Arizona Action. RCS concedes that ABC has a valid and enforceable debt against it, as asserted in ABC's POC (not less than $41 million), for purposes of summary judgment on the setoff issue. Accordingly, at first blush, it appears that RCS's right of setoff under Nevada law has been preserved.

**C.   Mutuality of the Claims, Debts and Parties**

Generally, the common law right of setoff requires mutuality between the claims, debts and parties. In re Wade Cook Fin. Corp., 375 B.R. at 588 (For mutuality to exist, the

---

[8] Moreover, ACCP is a Nevada limited liability company, several of the properties at issue were located in Nevada, and the alleged merger between RCS and ACCP took place in Nevada.

-19-

debts and claims must be "'in the same right and between the same parties, standing in the same capacity.'"); see also In re Women First Healthcare, Inc., 345 B.R. at 134-35 ("Both §§ 553 and 558 require the mutuality of parties, that is, the estate must seek to set off a debt it owes to the creditor against a debt that the creditor owes to the estate.").

Mutuality is at issue in this case. RCS's judgment for $57 million is against ABC, but ABC's claim for $41 million arises out of its loans to ACCP for the purchase and development of various properties and the Deed of Acknowledgment. There is no dispute that RCS was unrelated to ACCP prior to RCS's purchase of Krynski's membership interest in ACCP and the subsequent dissolution and liquidation of ACCP whereby RCS merged ACCP's assets with its own and assumed ACCP's liabilities.

RCS asserted that it was the successor in interest to ACCP under a de facto merger theory as a matter of law and the bankruptcy court so found. ABC seeks to have us reverse the court's finding on de facto merger, contending that the transactions between RCS and ACCP do not meet the requirements for a de facto merger for various reasons. ABC also argues that the merger should be unwound under a fraudulent transfer theory because ACCP transferred the assets for little or no consideration and harmed ACCP's creditors, especially ABC. ABC further contends that it is not seeking to hold RCS liable as the successor under the Deed of Acknowledgment, but rather is seeking to recover the properties that were fraudulently transferred to RCS.

-20-

## Successor Liability

De facto merger and fraudulent transfer theories are related in that both can be used to impose successor liability.[9] "A primary purpose of the de facto merger exception is to protect dissenting shareholders or creditors from a transaction that is a ploy to avoid the seller's liabilities." <u>Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc.</u>, 313 F.3d 616, 619 n.3 (1st Cir. 2002) (citing 15 W. Fletcher, <u>Law of Private Corporations</u> § 7045.10, at 32-34 (Rev. Ed. 1999)). "Courts commonly appeal to this doctrine where the asset transfer in question was neither an arms-length bargain nor supported by adequate consideration." <u>Id.</u>

However, this is not a successor liability case.[10] The

---

[9] Successor liability has it roots in assets sales. <u>Beck v. Roper Whitney, Inc.</u>, 190 F.Supp.2d 524, 535 (W.D.N.Y. 2001) ("The classic example of a de facto merger is a transaction in which the purchasing corporation pays for the acquired assets with shares of its own stock."). "[I]t is the general rule that when one corporation sells all of its assets to another corporation the purchaser is not liable for the debts of the seller." <u>Lamb v. Leroy Corp.</u>, 454 P.2d 24, 26-27 (Nev. 1969). The Nevada Supreme Court has identified four "well recognized exceptions" to the general rule: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction is really a consolidation or a merger; (3) when the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction was fraudulently made in order to escape liability for such debts. <u>Id.</u>

[10] Indeed, RCS is not trying to escape liability from ABC but seeks to establish that it properly assumed ACCP's liabilities through a merger. ABC does not seek to impose liability on RCS for the breach of the Deed of Acknowledgment but instead relies on fraudulent transfer law and a constructive trust remedy to recover the properties that were transferred from ACCP to RCS through the merger.

-21-

bankruptcy court did not apply the de facto merger doctrine to impose successor liability on RCS in the context of an asset sale. Rather, the court used the doctrine to recognize the transactions between RCS and ACCP as a valid merger because RCS failed to follow the statutory requirements under Nevada law that would have supported a merger in law. "One meaning of de facto merger . . . refers to a bona fide attempt to merge or consolidate that fails to comply with one or more legal requirements for a merger . . . ." 15 W. Fletcher, <u>Law of Private Corporations</u> § 7047.20 (Rev. Ed. Sept. 2012). Nevada law gives no indication that its courts would limit the use of the de facto merger doctrine to successor liability cases.

**De Facto Merger:  Requirements Under Nevada Law**

Nevada law provides a comprehensive statutory framework for the merger of corporations in Nev. Rev. Stat. Chapter 92A. Those statutes set forth the requirements for the approval of the merger and contents for the plan of merger, filing requirements for mergers, and the like. A consummated agreement of merger generally imposes upon the surviving corporation all liabilities of the constituent corporations so merged or consolidated. Nev. Rev. Stat. 92A.250. RCS conceded at the hearing on this matter that it did not file its plan of merger with the Secretary of State as required under Nevada law. Nev. Rev. Stat. 92A.200.

Nevada recognizes the de facto merger doctrine when there has been a failure to comply with the merger statutes. <u>See Vill. Builders v. U.S. Labs., Inc.</u>, 112 P.3d 1082, 1087 (Nev. 2005); <u>see also</u> <u>Schumacher v. Richards Shear Co.</u>, 451 N.E.2d

-22-

195, 198 (N.Y. Ct. App. 1983) (A de facto merger occurs when a transaction, although not in form a merger, is in substance "a consolidation or merger of seller and purchaser."). Although we are not applying the doctrine in a successor liability case, the four factor test applied in such cases is instructive for purposes of our analysis: "(1) whether there is continuation of the enterprise, (2) where there is a continuity of shareholders, (3) whether the seller corporation ceased its ordinary business operations, and (4) whether the purchasing corporation assumed the seller's obligations." Vill. Builders, 112 P.3d at 1087. The court is instructed to weigh these factors equally to determine if a plaintiff has established a prima facie case for de facto merger, and "no single factor 'is either necessary or sufficient to establish a de facto merger.'" Id.[11]

In this case we conclude that RCS has showed a prima facie case for at least three of the factors. The record shows there was a continuity of shareholders. Before its merger with ACCP, RCS, a limited liability company, was the sole member of ACCP through the purchase of Krynski's membership interest. Cheryl and Rick Sodja were the sole members of RCS. Therefore, the Sodjas were indirectly members in ACCP. It is sufficient for a finding of continuity of ownership that the Sodjas held

_____

[11] In Vill. Builders, the Nevada Supreme Court determined that a de factor merger does not exist when only two of the four factors exist. 112 P.3d at 1090. It therefore appears that more than two factors are needed to demonstrate a de facto merger under Nevada law. See also Lumbard v. Maglia, Inc., 621 F.Supp. 1529, 1535 (S.D.N.Y. 1985) ("Not all of these factors are needed to demonstrate a merger; rather, these factors are only indicators that tend to show a de facto merger.").

-23-

interests in both RCS, the successor corporation, and ACCP, the predecessor. "[T]he cases uniformly hold that continuity, not uniformity, is the significant variable." Lumbard, 621 F.Supp. at 1535. (S.D.N.Y. 1985). Next, ACCP did not continue to exist after the transfer of its assets. The Dissolution, Distribution and Liquidation Agreements show that all of ACCP's property, assets, and liabilities were merged into RCS. ACCP was not dissolved immediately but remained as a mere shell and is now a bankrupt entity. However, so long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a de facto merger will be made. U.S. v. Gen. Battery Corp., Inc., 423 F.3d 294, 305 (3d Cir. 2005) ("barren continuation" of the seller company does not bar application of the de facto merger doctrine); Morales v. City of N.Y., 849 N.Y.S.2d 406, 412 (N.Y. Sup. Ct. 2007) (same). Third and last, RCS assumed ACCP's liabilities. Both of the Dissolution, Distribution and Liquidation Agreements dated November 12th and 13th, 2008, recite that RCS expressly assumed all the debts and liabilities of ACCP.

In sum, although the facts of this case do not fit neatly into the test for finding a de facto merger in the context of an asset sale, none of the above mentioned factors were sufficiently disputed by ABC so as to preclude this Panel from deciding that a valid merger between RCS and ACCP occurred as a matter of law. As a result, all the requirements for a lawful setoff under Nevada law were met: there was mutuality between the claims, debts and parties, and each party had a valid and

-24-

enforceable debt against the other.

**D.    ABC's Defenses to Setoff and Cross Motion**

ABC asserted several defenses to setoff, including that of fraudulent transfer and imposition of a constructive trust. After the bankruptcy court granted RCS's motion for setoff based on de facto merger, it commented "but I think maybe the first question is does that ruling moot [those] issue[s]?"  Hr'g Tr. 5/22/12 at 37:10-12.  Despite this comment, the court denied the cross motion on the merits.  The bankruptcy court's first instinct however was the correct one: its ruling based on the de facto merger of ACCP into RCS conclusively resolved all arguments raised in ABC's cross MSJ, which were also its defenses to RCS's motion.

The determination that ACCP had properly merged into RCS with RCS assuming ACCP's liabilities obviated any possibility that a transfer had occurred, a critical element for fraudulent transfer.  Under Nev. Rev. Stat. 112.150 a "'[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Here, due to the merger, there cannot have been the "disposing of or parting with an asset or an interest in an asset" nor can it be said that the merger entailed any separation or divestment of corporate assets from ACCP.  ACCP's assets before the merger remained after the merger.  Therefore, the substantive economic effect of the merger was that there was no change with respect to the properties and thus there could be no "transfer" from

-25-

ACCP to RCS within the meaning of Nevada's fraudulent transfer act. Since no transfer occurred, it was not necessary for the bankruptcy court or us to address these arguments further. We would note, however, that because RCS assumed all the liabilities of ACCP in the merger, such assumption of the debt which went with the assets would be reasonably equivalent value, conclusively defeating another element necessary to prove a fraudulent transfer. See Nev. Rev. Stat. 112.180(b).

To the extent that ABC's cross motion argued that it could assert a constructive trust in the assets of ACCP, now RCS, this theory fails as a matter of Ninth Circuit law. A constructive trust is an equitable remedy, not a claim for relief, that remains inchoate until it has been imposed by a court. Torres v Eastlick (In re N. Am. Coin & Currency, Ltd.), 767 F.2d 1573, 1575 (9th Cir. 1985). Our court recognized that a constructive trust imposed by state law prepetition would exclude the res from the debtor's estate, but if it remains inchoate postpetition, it is subordinate to the trustee's strong-arm powers. Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.), 172 B.R. 638, 642 (9th Cir. BAP 1994) (citing Chbat v. Tleel (In re Tleel), 875 F.2d 769, 771-72 (9th Cir. 1989); see also Taylor Assocs. v. Diamant (In re Advent Mgt. Corp.), 178 B.R. 480, 488 (9th Cir. BAP 1995). Although ABC asserted the constructive trust theory in its Nevada litigation and used it as a basis to record the lis pendens that were dissolved by the bankruptcy court, no court had imposed a trust. As a result, the properties remained property of RCS's estate and any action to claim the inchoate remedy is trumped by the strong arm

-26-

powers held by the debtor in possession, RCS.

ABC's other claims arise from breach of contract and various intentional torts, claims which would result in a damages claim against RCS/ACCP. However, RCS's motion conceded the existence of the full amount of ABC's monetary claim for the purpose of asserting its setoff argument and the court effectively ruled that conceded claim was "paid" by the setoff. As a result, the other arguments of ABC in defense or in its cross MSJ are moot: the liability is conceded and paid. ABC is owed no further debt and has no grounds for further complaint.

In essence, the bankruptcy court's denial of the ABC motion was compelled by it ruling in favor of RCS on the setoff issue. We find no error in that ruling.

**E.   Amount of ABC's Claim**

The order granting RCS's summary judgment stated that the amount of ABC's claim was USD$30,366,140.90. In determining that amount, the bankruptcy court used the exchange rate for Australian dollars as of December 11, 2008, the date of ACCP's purported breach under the Deed of Acknowledgment.[12] Therefore, ABC's AUD$41 million claim was converted to USD as of that date. ABC moved for reconsideration on that issue, arguing that § 502(b) required the exchange rate to be calculated as of the date of the petition. According to ABC, if that rate is used the amount of its claim is approximately USD$42,139,800. The

---

[12] The December 11, 2008 date was the date of the letter sent by the ABC receiver and manager to ACCP stating that ABC would not purchase any more of ACCP's properties under the Deed of Acknowledgment and demanding the sum of AUD$39 million to be paid to ABC within seven days.

-27-

bankruptcy court did not state any reason for denying ABC's motion for reconsideration on this ground.

Section 502(b) governs the allowance of claims:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount. . . .

"This section 'prevents the value of a claim from fluctuating by freezing the claim as of the petition date and converting it to United States dollars. The amount of the claim will not change, even . . . if the applicable currency rises or falls in relation to dollars.'" In re Global Power Equip. Grp., Inc., 2008 WL 435197 (Bankr. D. Del. 2008) aff'd 400 B.R. 17 (D. Del. 2009). In Global Power, the bankruptcy court declined to consider whether the "judgment day" or the "breach day" rule[13] applied for purposes of the relevant date for applying an exchange rate, instead finding that the plain language of § 502(b) controlled. The bankruptcy court's decision was affirmed on appeal.

RCS argues that Global Power stands for the proposition that § 502(b) does not require that claims in foreign currency

---

[13] The "judgment day rule" states that when a contractual obligation is payable in a foreign country in that country's currency, the amount owed should be converted at the rate in effect on the date of judgment. See Zimmermann v. Sutherland, 274 U.S. 253, 255-56 (1927). The "breach day rule" parallels the general rule for contract damages: that breach-of-contract damages are measured from the date of breach. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) ("Generally, in the case of a breach of a contract, a cause of action accrues when the breach occurs."). However, when choice of law questions arise, the "breach day rule" generally requires that the cause of action arise under American law.

-28-

be converted as of the petition date. We disagree. Nowhere does the plain language of the statute suggest that the court has discretion in applying its terms. Rather, the plain language of § 502(b) commands that the bankruptcy court "shall" determine the amount of such claim in lawful currency of the United States as of the petition date. U.S. v. Ron Pair Enters., 489 U.S. 235, 241 (1989) ("[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"); see also Brower v. Evans, 257 F.3d 1058, 1068 n.10 (9th Cir. 2001) ("'Shall' means shall.").

Moreover, using the "breach date" as the effective date for the setoff makes no sense under these facts. RCS did not obtain its judgment against ABC until almost two years after ABC declared that ACCP was in breach of contract. Thus, setoff could not have occurred on the earlier date. Further, as noted, RCS did not concede the validity of ABC's claim until February 17, 2012 when it moved for summary judgment on the issue of setoff. Finally, setoff was accomplished through RCS's plan of reorganization which had an Effective Date of December 14, 2012. If the purpose of § 502(b) is to freeze the value of a claim on the petition date to avoid fluctuations in the relevant currency, then § 502(b) inures to the benefit of RCS under these circumstances.

Accordingly, we conclude that the bankruptcy court erred in calculating the exchange rate by using the breach date rather than the petition date as mandated by § 502(b).

## VI.  CONCLUSION

For the reasons stated above, we AFFIRM the bankruptcy court's grant of RCS's MSJ and AFFIRM the court's denial of ABC's cross MSJ.  However, we REVERSE and REMAND on the amount of ABC's claim.